2004 VT 89

# Sean Quinn v. Barbara Grimes, et al.

[861 A.2d 1108]

No. 02-543

Present: Amestoy, C.J., Dooley and Skoglund, JJ., and Allen, C.J. (Ret.), and Gibson, J. (Ret.), Specially Assigned

Opinion Filed September 10, 2004

182

*Norman R. Blais*, Burlington, and *Karen R. Shingler*, Burlington, for Plaintiff-Appellant.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiff Sean Quinn appeals an order by the Chittenden Superior Court granting summary judgment to defendants City of Burlington, acting by and through the Burlington Electric Department, and Barbara Grimes, manager of the Burlington Electric Department (defendants). On appeal, plaintiff claims the trial court erred when it dismissed his 42 U.S.C. § 1983 action for violation of his procedural due process rights because he was a tenured public employee who was fired without the benefit of the procedural safeguards required by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). We agree that the procedural safeguards mandated by *Loudermill* apply, and therefore reverse the summary judgment entered in favor of defendants, but cannot determine on the record before us whether plaintiff received those safeguards. We remand for that determination.

¶ 2. On August 30, 2000, while working for the Burlington Electric Department (BED), plaintiff was struck on the elbow by a passing car. At the time of his injury, plaintiff, who had been a BED employee for over twenty years, was a line worker. It had been the practice of BED that employees who were temporarily unable "to do the physical labors required of their job" were accommodated by assigning them light duty work. For at least a significant part of the time after plaintiff's

injury, he was assigned light duty work. On November 13, 2001, plaintiff underwent surgery, and six days later he was examined by the City's medical examiner. The medical examiner found that plaintiff was "[n]ot medically qualified currently for the position of Line Worker .... His ability to return to this position will depend on the outcome of his recent surgery."

¶ 3. Upon receiving the medical examiner report, defendant Grimes sent plaintiff a letter, which plaintiff received the day before Thanksgiving. The letter informed him that he was being terminated pursuant to Burlington Code of Ordinances § 24-2, which states in relevant part:

> (a) In the event that any city employee ... shall hereafter have been disabled from his/her employment for a period of three (3) months, the head of the department employing such employee ... shall immediately arrange for an examination of such employee by a member of the board of medical examiners for the purpose of determining the status of his/her disability.
>
> ....
>
> (c) If the medical board member advises the department head ... that, in the board's opinion, it is not reasonably probable that the employee will return to full duty within six (6) months of the onset of injury or illness, the department head ... shall immediately notify the employee of the medical board's decision and take steps to terminate the employee's employment, effective not earlier than ninety (90) days following the onset of illness or injury ....

The letter explained that given the November 19, 2001 medical report and the requirements of the ordinance, November 30, 2001 would be plaintiff's last day of work. The letter did not offer plaintiff any form of pretermination hearing in which to contest the termination. Plaintiff received no other notice regarding his upcoming termination.

¶ 4. Although the letter did not state that plaintiff could discuss his impending termination, plaintiff did have a brief meeting with defendant Grimes. The content of the meeting is disputed. Defendant Grimes stated in her affidavit that she and plaintiff "discussed the letter, the City Ordinance and the decision regarding his employment," but plaintiff "did not dispute that he could not do the work and he did not challenge the medical decision of the examiner." Plaintiff stated that he initiated the meeting to complain that it was wrong to fire an

employee of twenty-five years by sending a letter to be received the day before Thanksgiving. He added that defendant Grimes responded that she fired him at the request of "HR and Legal" and "there was nothing that she could do." He also added that no one told him that he could discuss with her the circumstances of the termination, and if he could have, he would have said that he was able to continue doing light duty work and that BED had failed to follow the procedures in the ordinance. Plaintiff was subsequently terminated, but returned to BED as a line worker in May 2002 after receiving medical clearance.

¶ 5. Following his termination, plaintiff filed suit against defendants for a declaratory judgment, permanent injunction, and damages, alleging a violation of his constitutional right to due process under the Fourteenth Amendment. Plaintiff argued, as he does here, that he was terminated without the benefit of notice or a hearing, as required by *Loudermill.* After filing suit, plaintiff moved for summary judgment on the due process issue. Defendants opposed the motion and cross-moved for summary judgment arguing that the due process clause was inapplicable because: (1) plaintiff did not have a property right to continued employment in a job he was physically unable to perform; and (2) a hearing is not required when the termination grounds are a physical inability to work. Defendants further asserted that even if the due process clause was applicable, there was no violation in this case because during his meeting with defendant Grimes plaintiff had a fair opportunity to be heard and even if a more formal hearing was held there was no evidence to suggest that this would have altered BED's decision.

¶ 6. The superior court granted defendants' motion for summary judgment finding that the ordinance conditioned plaintiff's property right to employment on his physical ability to perform his job and that plaintiff had "made no showing of any relevant fact which, had it been found in his favor at a hearing, would have resulted in a different outcome." In reaching this decision, the court interpreted the ordinance as requiring "that an employee who will not return to full duty within six months must be terminated" and found that plaintiff had no right to receive "permanent light duty assignments." Plaintiff appeals from this order.

¶ 7. When reviewing a grant of summary judgment we apply the same standard as the trial court. *Richart v. Jackson,* 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate if, taking all the allegations of the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a

matter of law. *Fritzeen v. Trudell Consulting Eng'rs, Inc.*, 170 Vt. 632, 633, 751 A.2d 293, 296 (2000) (mem.). It is not the function of the trial court to resolve disputed issues of fact when ruling on a motion for summary judgment. *Id.* Therefore, if a genuine issue of material fact exists, summary judgment cannot be granted, and the trial court's order must be reversed.

¶ 8. To establish a § 1983 claim for violation of his procedural due process rights plaintiff must show that: (1) he had a constitutionally protected property right to continued employment with BED; and (2) he was deprived of this right without notice and an adequate opportunity to be heard. See *Rich v. Montpelier Supervisory Dist.*, 167 Vt. 415, 420, 709 A.2d 501, 504 (1998). A constitutionally protected property interest in continued employment arises when an employee is "entitled to a benefit created and defined by a source independent of the Constitution, such as state law." *Huang v. Bd. of Governors*, 902 F.2d 1134, 1141 (4th Cir. 1990). We have held that state employees whose tenures are governed by a collective bargaining agreement possess a property interest in continued employment, such that due process protections apply to them. See *In re Gregoire*, 166 Vt. 66, 71, 689 A.2d 431, 434 (1996) (citing *In re Towle*, 164 Vt. 145, 153, 665 A.2d 55, 61 (1995)). Although the nature of plaintiff's job security rights is largely unexplored in the record, we have no reason to differentiate between plaintiff's rights and those of a state employee. Indeed, defendants have not contested that plaintiff has a sufficient property interest in his position such that due process protections would apply if he were fired for misconduct. Defendants argue, however, that Ordinance § 24-2(c) precludes plaintiff from having a property interest in a position that he is physically unable to perform. As a corollary to this argument, they argue that even if plaintiff had a property right no process is due because no facts are contested and the ordinance requires that plaintiff be terminated.

¶ 9. Defendants' position is best analyzed in light of the Supreme Court decision in *Loudermill*. In that case, two tenured public employees, Loudermill and Donnelly, challenged the constitutionality of their dismissals because they were not given an opportunity to contest their employer's decision prior to termination. 470 U.S. at 535-36. Loudermill was dismissed from his job as a security guard for allegedly lying on his job application when he stated he had never been convicted of a felony. *Id.* at 535. Loudermill contended that he did not lie, because he

was unaware that his conviction constituted a felony. *Id.* Donnelly, a bus mechanic, was fired after failing an eye exam. *Id.* at 536. Both employees were fired pursuant to an Ohio law stating that public employees could be fired only for cause, and once terminated, an employee could seek a post-termination review. *Id.* at 535.

¶ 10. The Supreme Court concluded that a post-termination review did not sufficiently protect the employees' constitutional right to due process and accordingly held that employees with a property right in public employment must be given notice and an opportunity to be heard prior to termination. *Id.* at 546. In reaching this conclusion, the Court explained that providing the employee an opportunity to present his or her side of the story is vital to reaching an accurate termination decision because many dismissals involve factual disputes between the employee and the employer. *Id.* at 543. Moreover, the Court stated that, "[e]ven where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* at 543.

¶ 11. The *Loudermill* analysis is instructive to our resolution of this case in two ways. First, the *Loudermill* Court rejected the defendants' argument that the plaintiffs' property interest in their jobs was subject to outlined termination procedures and, therefore, they had no property interest in more protective procedures. The Court held that substantive rights and procedures are distinct, so that "'[p]roperty' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Id.* at 541. The Court noted that acceptance of the defendants' argument would reduce the due process clause "to a mere tautology." *Id.*

¶ 12. Second, the *Loudermill* decision did not turn on a dispute about the underlying facts proffered to support the discharge decision. Indeed, Justice Brennan concurred in *Loudermill* because he found the pretermination procedures required by the majority to be adequate only because the core facts justifying the dismissal were not in dispute in either case. *Id.* at 552-53. On this point, the majority recognized that an employee could not demand a pretermination hearing to argue that the employer should "depart from legal requirements," but noted that "where there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one." *Id.* at 543 n.8. Thus, the Court found that the cases in front of it "involved arguable issues" and added that

"the right to a hearing does not depend on a demonstration of certain success." *Id.* at 544.

¶ 13. We emphasize those parts of the *Loudermill* analysis because they significantly undercut defendants' argument that plaintiff has no property interest in his position because of his physical incapacity and the superior court's rationale that no hearing was required because plaintiff failed to identify any "relevant fact" in issue.

¶ 14. The arguments defendants make here were considered and rejected in *Coleman v. Department of Personnel Administration*, 805 P.2d 300 (Cal. 1991), a case similar to this one. In *Coleman*, the plaintiff, a state employee, was terminated pursuant to a statute that stated "absence without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service." *Id.* at 304. There was no dispute that the plaintiff in *Coleman* was absent without leave for the period specified in the statute. *Id.* at 303. As in this case, the state argued that because the statute deemed the resignation "automatic," the plaintiff had no property interest in his job once the five-day period had run and nothing was in dispute for a hearing. *Id.* at 308. The California Supreme Court rejected the argument:

> [T]he AWOL statute is not self-executing. Although the AWOL statute defines an unauthorized absence of five consecutive working days as an "automatic resignation," the decision whether to invoke the statute's resignation provision rests with the state. Therefore, the absence without leave becomes an automatic or constructive resignation only if the state decides to invoke the statute.
>
> It is true that the AWOL statute does not expressly grant the state such discretion. In practice, however, the state does exercise discretion in determining whether or not to invoke the statute, as this case illustrates: Coleman was absent without leave for over a month before the state treated his absence as a statutory resignation. . . .
>
> In addition, before it can invoke the AWOL statute, the state must make factual determinations; whether the employee has resigned under the AWOL statute turns on the presence of the factual prerequisites for statutory resigna-

tion, namely, an absence that is for five consecutive working days and is without leave.

*Id.* at 308-09.

¶ 15. The circumstances before us are, in all relevant aspects, comparable to those in *Coleman*, and our analysis parallels that of the California Supreme Court. Like the California AWOL statute, the Burlington ordinance requires the city to make factual determinations and then decide whether the ordinance applies. The ordinance requires that the employee be "disabled from his/her employment for a period of three (3) months." Plaintiff alleges that an employment policy allowed him to do light duty work when his physical condition prevented him from performing his normal line worker responsibility. It is undisputed that he continued to do light duty work after his accident. Thus, it is arguable whether plaintiff was disabled from his employment within the meaning of the ordinance.

¶ 16. For this reason, we agree that the ordinance represents more an attempt to limit the available procedural protections than to condition plaintiff's property rights. *Loudermill* applies equally to a termination for physical incapacity as to a termination for misconduct. See *Pavonarius v. City of Allentown*, 629 A.2d 204, 207 (Pa. Comm. Ct. 1993). In fact, although the *Loudermill* Court found a property interest in an Ohio civil service statute that allowed termination only for "misfeasance, malfeasance and nonfeasance in office," 470 U.S. at 538-39, one of the plaintiffs was fired for failing an eye examination. *Id.* at 536. Consistent with *Loudermill* and *Coleman*, we hold that the employee's procedural protections are controlled by the due process clause and can not be limited in the ordinance on the theory that the procedural rights define the property interest.

¶ 17. On this point, we find that the trial court's observation that plaintiff had no right to light duty work beside the point. The issue is whether plaintiff's job actually included light duty work when he could not perform his line worker responsibility, not whether he had a right to such work. As long as light duty work was part of his job, he was in a position to argue that he should be continued in light duty work.

¶ 18. Equally important, the record undercuts any claim that the application of the ordinance is automatic. Although the ordinance appears to require a physical examination after three months of the onset of disability, defendant Grimes failed to invoke the ordinance for over a year. Thus, defendants exercised discretion in deciding whether to invoke the ordinance, and plaintiff should have had the opportunity

to address how that discretion was exercised. Indeed, defendants waited so long that the medical examiner could no longer make the determination called for in the ordinance — "whether it is reasonably likely" that the employee would return to his duties within six months of the date of the injury. See Burlington Code of Ordinances § 24-2(c). Instead, the examiner determined whether plaintiff was "medically qualified" for the position of line worker on the day of the examination, a determination not called for in the ordinance. Yet, defendant Grimes relied upon this determination in deciding whether to terminate plaintiff. Thus, the record demonstrates that defendants exercised discretion in deciding whether to invoke the ordinance, so that plaintiff in this case is in the same position as the plaintiff in *Coleman*.

¶ 19. The foregoing analysis answers both the argument that plaintiff had no protected property interest and the argument that plaintiff made no showing of a relevant fact which might have led to a different outcome. As the Court said in *Loudermill*, plaintiff's right to a hearing "does not depend on a demonstration of certain success." 470 U.S. at 544; see also *City of North Pole v. Zabek*, 934 P.2d 1292, 1298 (Alaska 1997) ("Even if it appears almost certain that the employee will be unable to [present facts that might weigh against termination], due process requires that she be given the opportunity to try.").

¶ 20. Defendants urge that, if we do not accept the superior court's rationale and decision, we should nevertheless affirm the denial of plaintiff's summary judgment motion because there are disputed issues of material fact. We do not believe, however, that defendants have demonstrated that material facts are in issue on whether plaintiff has a sufficient property interest in continued employment or whether there were matters in dispute for consideration at a pretermination hearing. Accordingly, we hold that the superior court should have granted summary judgment to plaintiff on his claim that he was entitled to a pretermination hearing.

¶ 21. We now turn to defendants' argument that even if *Loudermill* is applicable, plaintiff still does not have a viable § 1983 claim because he (1) was provided with notice and opportunity to be heard by the medical examination; (2) was given advance notice of the termination with reasons; and (3) met with Ms. Grimes. These alternative grounds were not considered by the trial court. Although we can provide some guidance on these arguments, we believe it preferable that the superior court consider them in the first instance, particularly because

the record is so sparse and some additional factual development will be necessary for a decision, by summary judgment or otherwise.

¶ 22. In *In re Hurlburt*, 2003 VT 2, ¶ 29, 175 Vt. 40, 820 A.2d 186, we explained that "[n]otice under *Loudermill* requires no more than notice of the charges, an explanation of the evidence and an opportunity for the employee to present evidence." See also *Loudermill*, 470 U.S. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."). Plaintiff received notice of the termination, and an explanation of the employer's reasons for the termination. He contests, however, that he had an opportunity "to present evidence." Defendants argue that he twice had that opportunity: during his medical examination and in his meeting with defendant Grimes.

[7] ¶ 23. We do not believe that the medical examination constituted an opportunity for plaintiff to tell his side of the story. As outlined above, plaintiff's arguments against termination go to the ordinance's application to plaintiff's circumstances and the exercise of the employer's discretion to invoke the ordinance. The medical exam gave plaintiff no notice or opportunity to be heard on those issues.

¶ 24. This leaves plaintiff's face-to-face meeting with defendant Grimes on November 27, 2001. To satisfy basic due process requirements it was not necessary for defendants to provide plaintiff with a full evidentiary hearing. *Loudermill*, 470 U.S. at 545 ("In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action.") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 343 (1976)). A face-to-face meeting of the kind that occurred here can meet the *Loudermill* requirements, provided it affords employee some notice and opportunity to contest the employer's decision. See *Lovingier v. City of Black Hawk*, 198 F.3d 258, 1999 WL 1029125, at *3 (10th Cir. 1999) (unpublished table decision).

¶ 25. There are two potential deficiencies in the meeting that occurred here. First, the meeting must occur before the decision to terminate becomes final so that the employee has a meaningful opportunity to affect the final decision. See *O'Neill v. Baker*, 210 F.3d 41, 49 (1st Cir. 2000); *Matthews v. Harney Cty.*, 819 F.2d 889, 893 (9th Cir. 1987); *Guerrero v. Munoz*, 2002 WL 1880769, at *5 (D.P.R. Aug. 12, 2002); *Williams v. Pima Cty.*, 791 P.2d 1053, 1057 (Ariz. Ct. App. 1989) (recounting that *Loudermill* requires that the employee be given the opportunity to tell his side of the story "before his employer

reaches the decision to fire him"). Here, the notice to plaintiff clearly stated that he was terminated as of the end of November, with no suggestion that the decision was other than final or could be re-opened.* Plaintiff's version of the meeting suggests that defendant Grimes represented that the decision was unchangeable. Indeed, defendants have argued here that any pretermination hearing would have been irrelevant since the decision to terminate was required as a matter of law and could not be changed.

¶ 26. Second, plaintiff has argued that he had no opportunity to contest the decision because he did not know he could do so. This case is unusual because the meeting was called by the employee, not the employer. See, e.g., *Gregoire*, 166 Vt. at 69-70, 689 A.2d at 433. It is undisputed that plaintiff sought the meeting to express his frustration at being terminated after twenty-five years of service on the day before Thanksgiving and that he did not contest defendants' actions or present reasons why he should not be terminated. Ms. Grimes' affidavit states, "We discussed the letter, the city ordinance and the decision regarding his employment."

¶ 27. At least in other contexts, courts have held that the person whose property rights are being terminated must be informed of the right to contest the decision. See *Weaver v. New York City Employees' Ret. Sys.*, 717 F. Supp. 1039, 1045 (S.D.N.Y. 1989). However, the information may be provided by the circumstances of a pretermination meeting. See *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989). Based on the sparse record, it is difficult to determine whether plaintiff was aware that he was able to state his side of the story

---

* Defendants argue that the letter implied that the decision was not final because it stated "it is my intention to enter November 30, 2001 as the date of your last employment with the department." We do not read this language as making the decision tentative. Shortly thereafter, the letter goes on to state that plaintiff could apply for disability but only if he did so as an active employee — that is, "before November 30, 2001." The delay in making the termination effective was apparently to give plaintiff an opportunity to apply for disability status. The letter closed with the following paragraph:

> I wish to thank you for your years of service with the Burlington Electric Department. While I greatly regret that your health will not allow you to continue in your current position, I am hopeful that you will be able to engage in other pursuits. On behalf of the Department, Sean, I wish you all success in your future endeavors.

We believe that an employee would read these words to say that the decision to terminate had been reached.

against termination, if such an ability existed, at the face-to-face meeting.

¶ 28. We do not believe that either party's version of the meeting between plaintiff and defendant Grimes provides adequate detail to determine whether plaintiff had an opportunity to tell his side of the story prior to his termination becoming final. In addition, the record does not show why the ordinance was invoked when it was and the nature, extent, and availability of plaintiff's light duty work after the accident. We cannot conclude that there are no genuine issues of material fact or that either party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3).

¶ 29. There is another aspect of the relationship between the parties that needs development to resolve whether the meeting between plaintiff and defendant Grimes constituted a sufficient pretermination hearing to comply with *Loudermill*. Numerous decisions have emphasized that the nature of the process due prior to the termination of employment is affected by the nature and availability of post-termination process. See, e.g., *Powell*, 891 F.2d at 1459-60. The parties have not provided the court with any information on the remedies available to challenge plaintiff's termination after it occurred. That information should be provided on remand.

¶ 30. Finally defendants argue that we should affirm the grant of summary judgment because plaintiff has no damages as a matter of law. Relying on *Mellin v. Flood Brook Union School District*, 173 Vt. 202, 790 A.2d 408 (2001), the superior court adopted this rationale, holding that because the evidence shows plaintiff would have been terminated anyway, "plaintiff has not been harmed by procedural shortcomings, if any, and cannot recover."

¶ 31. In *Mellin*, the plaintiff, a teacher, had mistakenly received a license to teach at the elementary school level after applying for a license to teach only at the secondary school level. *Id.* at 215, 790 A.2d at 420. When the state licensing authorities found their error and revoked the elementary school license, she sued, alleging a denial of due process. *Id.* Although our primary holding was that plaintiff had no property interest in the mistaken license, we added that she would also not prevail because as a matter of law she lacked the qualifications for an elementary school license and, thus, she was not harmed by any process deficiency. *Id.* at 216-17, 790 A.2d at 421.

¶ 32. We do not believe that *Mellin* controls here. Even if we accept that the contexts are similar enough that the alternative *Mellin* rationale could apply here, the superior court's holding, and defend-

ants' argument based upon it, is just a repackaging of the earlier argument that plaintiff had no right to a pretermination hearing because nothing was in issue. We have already rejected this argument, holding that plaintiff had arguable positions surrounding whether the city ordinance covered his situation and whether defendants should invoke the ordinance.

*Reversed and remanded.*