2013 VT 56

## John L. Preston, Jr. v. Burlington City Retirement System

[76 A.3d 615]

No. 12-208

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed July 12, 2013

148

*John L. Preston, Jr.,* Pro Se, Greensboro, North Carolina, Plaintiff-Appellee.

*Colin K. McNeil* of *McNeil, Leddy & Sheahan, P.C.,* Burlington, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant City of Burlington Retirement System appeals from a superior court judgment reversing the City's decision to terminate the disability retirement of plaintiff, a former City firefighter. The City contends: (1) the trial court lacked subject matter jurisdiction; and (2) its decision to terminate the benefit was reasonable and proper. We affirm.

¶ 2. The facts may be summarized as follows. Plaintiff was employed by the City as a firefighter from 1992 to 2005. In February 2007, the City's Retirement Board, which administers the City's employee retirement system, approved plaintiff's application for disability retirement, awarding plaintiff a monthly pension of $2964.84 effective December 10, 2006.

¶ 3. Two years later, in February 2009, the Board's retirement administrator wrote to plaintiff requesting that he return a questionnaire designed to evaluate his current disability status. The letter cited the City's retirement ordinance, which provides that the Board may require any employee on disability retirement who has not attained the normal retirement age for members of his or her class to provide additional information and "undergo a medical examination." Burlington Code of Ordinances § 24-23(d).[1] Shortly thereafter, plaintiff returned the completed questionnaire, indicating that his activities remained subject to the same physical restrictions that had resulted in his disability retirement. He also sent a cover letter explaining that he was currently training to become an airline pilot, which he characterized as a position posing "low physical demands required under the medical restrictions that I have."

¶ 4. A few weeks later, the retirement administrator sent a second letter to plaintiff explaining that the Board had reviewed his questionnaire and voted to require that he submit to a further

---

[1] This section provides, in pertinent part, that the retirement board may "require any disability beneficiary who has not attained the normal retirement age for members of his class to undergo a medical examination" and further provides that, should a beneficiary "refuse to submit to such examination or otherwise refuse to provide requested information," the benefit may be "discontinued until [the] withdrawal of such refusal." Burlington Code of Ordinances § 24-23(d).

medical evaluation. Although the administrator offered to locate a medical facility near plaintiff's residence in Florida, plaintiff indicated that he wished to be examined in Vermont. The administrator, in response, wrote to plaintiff in late April 2009 explaining that she had arranged for him to have a "Functional Capacity Examination" in Colchester, Vermont in late June at the City's expense.

¶ 5. In late May 2009, plaintiff informed the retirement administrator that he could not keep the scheduled appointment, and shortly thereafter sent her a letter asserting that he was absolutely entitled to five years of disability-retirement benefits under the City ordinance. The Board referred the matter to the City Attorney's office, which notified plaintiff in July 2009 that the Board had concluded it was unable to assess his continued eligibility for disability benefits due to his failure to submit to an evaluation, and accordingly had determined to discontinue his benefits. The letter further explained that the Board would "consider reinstatement of the benefit" once plaintiff had complied with the request to submit to a functional capacity examination.

¶ 6. Plaintiff wrote to the retirement administrator the following month asking for reconsideration, stating that he had scheduled an appointment with his own physician in Colchester in September 2009. The administrator again offered to schedule a functional capacity examination with an independent evaluator to coincide with his physician's appointment, but no time-slot was available when she called the facility. Following the appointment with his family practice group, plaintiff sent the Board a note from a physician assistant stating she had evaluated plaintiff's chronic back pain and found that his "condition regarding work capabilities ha[d] not significantly changed nor improved." In the meantime, plaintiff had submitted, and the Board had approved, a request to take a functional capacity examination in Portland, Oregon. However, the certified letter from the administrator to plaintiff outlining the steps necessary to arrange the examination was returned because plaintiff did not sign it.

¶ 7. Plaintiff contacted the retirement administrator in November 2009, explaining that he had been "MIA" because of problems with his son, and asked for guidance on how to proceed. The administrator again advised plaintiff to set up an appointment for a functional capacity examination with the identified provider in Oregon, but he failed to do so. In February 2010, plaintiff sent a

letter to the administrator explaining that he had recently completed his pilot training, had been hired by an airline company based in Texas, and wished to complete the required examination, although he maintained that he was entitled to continued receipt of benefits. The Board again referred the letter to the City Attorney's office, which notified plaintiff, in March 2010, that his "cooperation with the Board [was] a condition of continued eligibility for disability benefits," and that failure to comply with Board's requests risked a decision "permanently revoking any rights you may have to disability benefits."

¶ 8. Thereafter, on April 12, 2010, plaintiff participated in a functional capacity examination at Odessa Physical Therapy in Odessa, Texas. According to the evaluation report subsequently prepared by Odessa and submitted to the Board, plaintiff expressed concern during the examination that he might injure himself and risk losing his new job if he performed the "repetitive motion and dynamic lifting portions of the test." The Odessa evaluator contacted the City's retirement administrator and discussed plaintiff's concerns, after which plaintiff declined to complete those tasks. In the comments section of the report, the evaluator expressed the view that plaintiff's concerns were "valid and reasonable" under the circumstances. Based on the balance of the physical examination and plaintiff's medical history, the evaluator "could not recommend that [plaintiff] is physically capable of performing the job duties of a fireman safely," noting that he "can not run," "walks on the slow side of normal," and would have "difficulty climbing ladders, crawling, kneeling, squatting, wielding an axe, and dragging a body." The evaluator concluded that plaintiff's physical condition would not interfere with the essential functions of piloting a plane.

¶ 9. After deferring the matter at its regularly scheduled meeting in June 2010, the Board voted at its next meeting in July 2010 to revoke plaintiff's disability retirement. In a letter dated August 6, 2010, the retirement administrator informed plaintiff of the Board's action. The administrator noted that plaintiff had "submitted to a functional examination [in April of 2010] but did not fully complete the examination citing a fear that you might re-injure your back despite being employed as a pilot at the time of the examination." The administrator explained that the Board had "determined that this is another refusal on your part to comply with its requests," that it had "now spent over a year"

seeking plaintiff's compliance, that it was unable to "determine [plaintiff's] true disability status," and that as a result of plaintiff's "continued refusal to fully cooperate" with the Board's requests his disability benefits were "permanently revoked pursuant to [Burlington Code of Ordinances §] 24-23(d)."

¶ 10. Plaintiff appealed the decision to the superior court under Vermont Rule of Civil Procedure 75(a), which provides for review of government action not otherwise expressly appealable by statute, under Rule 74, "if such review is otherwise available by law." The City moved for summary judgment, asserting that the court lacked subject matter jurisdiction, or, in the alternative that the appeal should be decided on the record, which demonstrated that its decision to terminate plaintiff's disability retirement was reasonable. See *In re Soon Kwon*, 2011 VT 26, ¶ 6, 189 Vt. 598, 19 A.3d 139 (mem.) (noting that, in reviewing agency action, court's task is to "determine whether there was any reasonable basis for the [agency's] findings" (quotation omitted)). The City's motion was supported by letters and emails between plaintiff and the City's retirement administrator, the administrator's affidavits, minutes of the Board's meetings, the Odessa evaluation report, the affidavit of the Board chair, and a portion of plaintiff's medical records. Plaintiff, in opposition, submitted an affidavit and two additional letters from the physical therapy specialist who conducted the Odessa evaluation.

¶ 11. The trial court issued a written ruling in March 2012. The court rejected the City's jurisdictional argument, which was predicated on a provision in the City's retirement ordinance to the effect that "[t]he retirement board shall have the *final say* as to all decisions required to be made pursuant to the provisions of this section." Burlington Code of Ordinances § 24-23(j) (emphasis added). The court acknowledged our holding in *Mason v. Thetford School Board* that a statute may preclude judicial review of an administrative decision by providing that the decision "shall be final." 142 Vt. 495, 498, 457 A.2d 647, 649 (1983). The court relied, however, on our subsequent ruling in *Campbell v. Manchester Board of School Directors*, which reaffirmed the principle that "an otherwise final decision may be amenable to review by writ of certiorari . . . where the decision was made by one acting in a judicial or quasi-judicial position." 152 Vt. 643, 644, 565 A.2d 1318, 1318 (1989) (mem.). The trial court here concluded that the Board's decision was quasi-judicial in nature, subject to review

under the traditional writ of certiorari, and therefore subject to appeal under Rule 75. See *Hunt v. Vill. of Bristol*, 159 Vt. 439, 440-41, 620 A.2d 1266, 1266-67 (1992) (observing that Rule 75 had replaced traditional extraordinary writs and holding that police chief's dismissal was in the nature of an adjudication reviewable under Rule 75).

¶ 12. On the merits, the court found that the record evidence showed that plaintiff had reasonably cooperated in the physical assessment conducted by Odessa, and thus provided no support for the City's decision to revoke his disability retirement based on a failure to cooperate. The City's subsequent motion to alter or amend the judgment was denied. This appeal followed.

¶ 13. As we have explained, "[r]eview of governmental action is governed by V.R.C.P. 74 and 75. Rule 74 applies when review is provided by statute. When legislation is silent on the mode of review, Rule 75 governs the appellate procedure if review is 'available by law.' " *Hunt*, 159 Vt. at 439-40, 620 A.2d at 1266. We have also recognized that "available by law" includes review of administrative agency decisions under the traditional writs for "extraordinary relief" such as certiorari and mandamus. *Id.* at 440, 620 A.2d at 1266; see also *Ahern v. Mackey*, 2007 VT 27, ¶ 8, 181 Vt. 599, 925 A.2d 1011 (mem.) ("[T]he relief available under Rule 75 represents the modern equivalent, of extraordinary relief by mandamus or certiorari." (quotation omitted)); *Vt. State Emps. Ass'n v. Vt. Crim. Justice Training Council*, 167 Vt. 191, 195, 704 A.2d 769, 771 (1997) ("When, as here, legislation is silent on whether review is available, we have permitted appeal under Rule 75 so long as review would have been available under any one of the extraordinary writs, such as mandamus, scire facias, prohibition, quo warranto, and certiorari."). We have emphasized, however, that the standard of review of governmental action in this context is "necessarily narrow," *In re Town of Bennington*, 161 Vt. 573, 574, 641 A.2d 1331, 1332 (1993) (mem.), and that we will not substitute our judgment for that of an experienced administrative agency. *Ahern*, 2007 VT 27, ¶ 8.

¶ 14. The purpose of certiorari was traditionally to review "judicial or quasi-judicial" action of a lower court or tribunal, *id.*, a characterization which this and other courts have uniformly applied to agency rulings — like the one before us — affecting a public employee's disability-retirement benefits. See *Nash v*

*Coxon,* 155 Vt. 336, 338, 583 A.2d 96, 97 (1990) (noting that Vermont State Employee Retirement Board operates as "a quasi-judicial board" in making retirement-benefit decisions); see also *Terry v. Bd. of Trs. of City Pension Fund,* 854 So. 2d 273, 274-75 (Fla. Dist. Ct. App. 2003) (holding that city pension board's calculation of firefighter's disability-retirement benefit "was not legislative or executive, but was a quasi-judicial decision subject to judicial review" and that the "proper method of review is by certiorari"); *Staads v. Bd. of Trs. of Fireman's Ret. Pension Fund of Sioux City,* 159 N.W.2d 485, 489 (Iowa 1968) (holding that, in denying firefighter's application for special form of disability-retirement benefits, city board "was exercising quasi-judicial functions" subject to certiorari review); *Nichols v. Borst,* 439 N.W.2d 432, 433 (Minn. Ct. App. 1989) (holding that city board "acted in a quasi-judicial capacity when reviewing appellant's claim for reinstatement of disability benefits" and therefore writ of certiorari was proper means of reviewing its action in the absence of any specific statutory provision for judicial review of board proceedings); *Kendrick v. City of Chattanooga Firemen's & Policemen's Ins. & Pension Fund Bd.,* 799 S.W.2d 668, 668 (Tenn. Ct. App. 1990) (holding that action of city's police and firemen's pension board "was subject to review by a common law writ of certiorari since the agency was acting in a judicial or quasi-judicial capacity").

¶ 15. Vermont public employees have long enjoyed the right to Rule 75 review of decisions affecting their retirement benefits. See, e.g., *Vincent v. Vt. State Ret. Bd.,* 148 Vt. 531, 533-34, 536 A.2d 925, 927-28 (1987) (recognizing state employee's right to judicial review of State Retirement Board decision requiring social-security offset of disability-retirement payments); *Fitzpatrick v. Vt. State Ret. Sys.,* 136 Vt. 510, 511, 394 A.2d 1138, 1139 (1978) (holding that plaintiff's appeal route from State Retirement Board decision was to superior court under Rule 75 rather than directly to Supreme Court); see also *Jacobs v. State Teachers' Ret. Sys. of Vt.,* 174 Vt. 404, 415, 816 A.2d 517, 527 (2002) (recognizing that teacher aggrieved by decision of State Teachers Retirement Board "could have brought an action under V.R.C.P. 75(a) to review the refusal of the System to provide the relief she sought"). We conclude, therefore, that the trial court properly found jurisdiction under Rule 75 to review the Board's decision to terminate plaintiff's disability-retirement benefits.

▮ ¶ 16. The City challenges this conclusion, observing that one indicator an act is judicial in nature is whether the parties "have a right both to notice of the proceeding and to a hearing," *Verrill v. Dewey*, 130 Vt. 627, 630, 299 A.2d 182, 184 (1972) (quotation omitted), and pointing out that the retirement ordinance at issue here does not afford plaintiff or any other employee in his position the right to a hearing. The short and simple answer to the argument is that plaintiff and others like him are constitutionally entitled to notice and a hearing when their entitlement to disability-retirement benefits are placed at risk, regardless of the City's ordinance. See *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976) (recognizing that continued receipt of Social Security disability benefits is a "property interest" entitled to due process protection, and that "some form of hearing" affording the "opportunity to be heard at a meaningful time and in a meaningful manner" is required before an individual may be permanently deprived of that interest (quotation omitted)); *Russell v. Dunston*, 896 F.2d 664, 668-69 (2d Cir. 1990) (reaffirming rule that "municipal employee retirement benefits are constitutionally protected property"). As the Second Circuit Court of Appeals has observed, a public employee's "entitlement to disability retirement is a constitutionally protected property interest" requiring minimal due process protections in the form of notice and an opportunity to respond. *Dunston*, 896 F.2d at 668; see also *Quinn v. Grimes*, 2004 VT 89, ¶ 8, 177 Vt. 181, 861 A.2d 1108 (holding that public employee enjoyed property interest in continued employment, entitling him to notice and hearing). Thus, under the ordinance at issue here expressly providing plaintiff with a right to disability-retirement benefits for his years of service, plaintiff enjoyed a constitutionally protected property interest requiring, at a minimum, notice and a hearing before that benefit could be terminated. We conclude, therefore, that the trial court was correct in ruling that review in the nature of certiorari was available to plaintiff under Rule 75.[2]

▮ ¶ 17. Even assuming that jurisdiction is generally available under Rule 75, the City maintains nevertheless that review was specifically barred here under its ordinance providing that the

---

[2] Although plaintiff has not raised the issue, we observe that, before any further proceedings in this matter are held before the Board, the City may wish to review its procedures to ensure that they meet minimal due process requirements.

156

Retirement Board has the "final say as to all decisions" concerning disability retirement. We have acknowledged, to be sure, that judicial review of government agency actions may be precluded where a statute or ordinance unequivocally bars review. See, e.g., *Handverger v. City of Winooski*, 2011 VT 130, ¶¶ 4, 13, 191 Vt. 556, 38 A.3d 1153 (mem.) (upholding dismissal of Rule 75 complaint by former city manager under charter provision specifically providing that city council's "action . . . in suspending or removing the manager shall not be subject to review by any court or agency"); *Mason*, 142 Vt. at 498, 457 A.2d at 649 (holding that Rule 75 review of State Board of Education's denial of request to pay tuition for student to attend school outside his district was barred under statute providing that Board's "decision shall be final in regard to the institution the child may attend" (quotation and emphasis omitted)).

■ ¶ 18. At the same time, we have recognized that our Constitution generally affords "[e]very person within this state . . . a certain remedy, by having recourse to the laws," Vt. Const. ch. I, art. 4, and thus have cautioned that courts should be "hesitant to interpret arguably ambiguous legislation as foreclosing judicial review of administrative agency decisions." *Vincent*, 148 Vt. at 534 n.2, 536 A.2d at 927 n.2; see also *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986) ("From the beginning, our cases [have established] that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." (quotation omitted)). In deciding whether a statutory provision conveys an unambiguous intent to bar judicial review, we "look[ ] to the applicable law in the substantive area governing the case." *Mason*, 142 Vt. at 497, 457 A.2d at 648.

■ ■ ¶ 19. Viewed in this light, we are not persuaded that the City ordinance at issue here evinces a clear and unambiguous intent to bar judicial review of the Board's decision to terminate plaintiff's disability retirement. As *Mason* instructs, we must be mindful of the substantive context. *Id.* In Vermont, public employees like plaintiff generally fall within one of three broad retirement systems, the Municipal Employees' Retirement System (VMERS), 24 V.S.A. §§ 5051-5070, the State Employees Retirement System, 3 V.S.A. §§ 455-495, and the Teachers' Retirement System, 16 V.S.A. §§ 1931-1952. Each system provides for an

award of disability-retirement benefits, and each, in turn, uniformly provides that an employee denied such a benefit is entitled to a contested hearing conducted by a hearing officer, whose decision "shall constitute final *administrative* action." 24 V.S.A. § 5056a(c), 3 V.S.A. § 461a(c), 16 V.S.A. § 1938a(c) (emphasis added). The underscored language is significant, revealing as it does a clear intent that the agency decision shall be considered "final" solely for purposes of administrative exhaustion and ripeness for subsequent judicial review, not as a bar to such review. See *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955) (interpreting provision in Immigration Act that deportation orders of Attorney General "shall be final" as "referring to finality in administrative procedure rather than as cutting off the right of judicial review"); *Alaka'i Na Keiki, Inc. v. Matayoshi*, 277 P.3d 988, 1005 (Haw. 2012) (holding that statute making agency decision "final and conclusive" referred only to administrative finality and was "insufficient to evince legislative intent to preclude judicial review"); *Pendleton Bros. Vending, Inc. v. Ky. Fin. & Admin. Cabinet*, 758 S.W.2d 24, 28 (Ky. 1988) (holding that statute providing that decisions by secretary of finance shall be "final and conclusive . . . must be construed to mean 'final and conclusive' for administrative purposes, not as a barrier against judicial review").

¶ 20. Although the City has opted to fund its own employee retirement system rather than to participate in VMERS, nothing in the ordinance itself or any extrinsic evidence cited by the City reveals a specific and unambiguous intent to deprive its employees of the same right to Rule 75 review of disability-retirement decisions enjoyed by all other municipal and state employees in Vermont. Apart from the City's assertion, we find nothing to suggest that this was the purpose of the "final say" proviso as opposed to simply a statement that the decision shall be the City's final administrative word on the subject. In *Handverger*, for example, the Winooski city charter expressly provided that the "action of the council in suspending or removing the manager shall not be subject to review *by any court* or agency." 2011 VT 130, ¶ 4 (emphasis added) (quotation omitted). No such explicit expression of intent to preclude judicial review is evident here. It is not unreasonable to expect that, had the City actually intended to deprive its employees of the same opportunity for judicial review enjoyed by other public-sector employees in Vermont in identical circumstances, it would have expressed that intent in

clear and unmistakable terms. Although "final" may have broader meaning in circumstances lacking the substantive context presented here, see, e.g., *Mason*, 142 Vt. at 498, 457 A.2d at 649, the term cannot be viewed in a vacuum. We thus hold that the trial court correctly construed the City's ordinance to mean that the Board's decision shall constitute final administrative action, and correctly concluded that it had jurisdiction under Rule 75 to review the Board's decision terminating plaintiff's disability retirement.

¶ 21. Turning to the merits, we are equally persuaded that the trial court properly rejected the City's assertion that the termination decision was reasonable. As noted, the City's decision was narrowly predicated on a finding that plaintiff's failure to participate in certain parts of the functional capacity examination — due to his concern that he might reinjure his back — represented a continued "refusal . . . to comply with its requests" for information, and therefore grounds for termination under Burlington Code of Ordinances § 24-23(d). As the trial court accurately observed, however, the only evidence in this regard came from the Odessa evaluator, who concluded that plaintiff's concerns about completing the "repetitive motion and dynamic lifting" portions of the test due to the risk of reinjury were "valid and reasonable." The evaluator noted, moreover, that plaintiff's decision not to complete these portions of the test was made only after the City's retirement administrator had been contacted and "the concerns . . . discussed."[3] The record thus fully supports the trial court's conclusion that there was no reasonable basis for the

---

[3] The City complains that the trial court may have improperly relied on two subsequent letters from the Odessa evaluator, dated August 16, 2010 and October 2, 2011, that were not before the Board when it revoked plaintiff's disability retirement. In them, the evaluator elaborated on his conversation with the City's retirement administrator, stating in one that the risks and benefits of completing the tests were discussed and that "a conclusion was made that enough information had been collected" to determine plaintiff's ability to perform the functions of a firefighter, and in the other that "[i]t was decided that it was in no one's best interest to place the city, [plaintiff], and Odessa Physical Therapy in any kind of risk, should the patient be re-injured." The City notes that, in her affidavit, the retirement administrator maintained that she did not concur in the decision to forego the tests, but rather stated that "the decision was up to [plaintiff]." In ruling on the City's motion to alter or amend the judgment, the trial court indicated that the letters in question and the City's objections thereto did not affect its basic conclusion that plaintiff had cooperated in the evaluation process. Thus, the issue is immaterial.

Board's decision to terminate plaintiff's disability retirement predicated on a failure to cooperate. Accordingly, we discern no grounds to disturb the judgment.

*Affirmed.*