2015 VT 5
 

 


 








Nelson v. Town of St. Johnsbury Selectboard,
LaMotte, Oddy, Ruggles, Rust, Timson, Town of St. Johnsbury (2013-386)


 


2015 VT 5


 


[Filed 16-Jan-2015]


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.


 


 




 
 

 
 
 2015 VT 5

 

 

 



 




 
 

 
 
 No. 2013-386

 

 

 



 




 
 

 
 
 Ralph Nelson

 

 
 
 Supreme Court

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
 On Appeal from

 

 

 

 
 
      v.

 

 
 
 Superior Court, Caledonia Unit,

 

 

 

 
 
  

 

 
 
 Civil Division

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
 Town of St. Johnsbury Selectboard, Rodney
 LaMotte, 

 
 Kevin W. Oddy, Alan Ruggles, James L. Rust,

 
 Bernard Timson and Town of St. Johnsbury

 

 
 
 March Term, 2014

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
 Mary
 Miles Teachout, J.

 

 

 

 
 
  

 

 

 



Richard T. Cassidy of Hoff Curtis, Burlington, for Plaintiff-Appellant.


 


John T. Leddy and Kevin J. Coyle of McNeil, Leddy &
Sheahan, Burlington, for 


  Defendants-Appellees.


 


 


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and
Crawford, JJ.[1]


 


 


¶ 1.            
DOOLEY, J.   Plaintiff Ralph Nelson, the former town
manager of St. Johnsbury, appeals from a trial court decision granting partial
summary judgment to defendants, the Town of St. Johnsbury and its individual
selectboard members (collectively “the Town”), on his claims of wrongful
termination; violation of procedural due process under the Civil Rights Act, 42
U.S.C. § 1983; violation of Chapter I, Article 4 of the Vermont
Constitution; and promissory estoppel.  We reverse and remand on the trial
court’s dismissal of the wrongful termination, Civil Rights Act, and state
constitutional claims.  We affirm the court’s dismissal of the promissory
estoppel claim and its grant of summary judgment on the qualified immunity
defense.


¶ 2.            
In September 2010, the selectboard formally hired plaintiff as town
manager after he served briefly on an interim basis.  There is no evidence
that the parties negotiated or agreed upon any specific contract terms for
plaintiff’s employment.  According to plaintiff, the Town’s attorney
advised him on three separate occasions that he could be removed only for
serious misconduct, which the attorney assured was “an extremely high bar.”


¶ 3.            
As town manager, plaintiff undertook a major project to renovate and
lease the Town’s Pomerleau Building.  He apparently gained voter approval
on a renovation budget and negotiated a lease with a potential tenant. 
The selectboard contends that plaintiff made certain misrepresentations about
the proposed lease, which plaintiff denies.  On March 16, 2012,
selectboard chair, James Rust, informed plaintiff that the board had concerns
about his performance and gave him a letter stating that the board would be
conducting an inquiry and that “[r]efusing to answer, answering incompletely,
or answering untruthfully, questions relating to work is considered misconduct
for which an employee may be disciplined up to and including dismissal.” 
The letter never stated the nature of the inquiry, only that plaintiff was
obligated to cooperate.


¶ 4.            
Selectboard member Kevin Oddy conducted the inquiry into plaintiff’s
performance and drafted a list of concerns, including allegations that
plaintiff sexually harassed employees, created a hostile work environment,
attempted to influence a school board member, and lied.  No details were
provided in the list, and there is no evidence the list was disclosed to
plaintiff.  On April 2, 2012, Rust informed plaintiff that the inquiry had
turned up “something” and that the selectboard would be holding a meeting to
discuss plaintiff’s job.  Rust would not tell plaintiff what had turned
up.  He requested that plaintiff hand in his keys and laptop computer[2] and go home, and plaintiff complied.


¶ 5.            
On April 3, 2012, Rust called plaintiff and notified him that the
selectboard would be meeting that evening but that plaintiff was not obligated
to attend.  Plaintiff nonetheless attended.  When the meeting
convened that evening, the selectboard immediately recessed to executive
session.  After forty-five minutes, the board asked plaintiff to join
them, at which time they discussed the proposed lease.  According to the
selectboard members, they also questioned plaintiff about the other allegations
concerning his job performance, but plaintiff denies this.  The
selectboard asked plaintiff if he wanted to resign, and he declined. 
Consequently, the board returned to public session and passed a vote of “no
confidence.”  According to plaintiff, he did not understand until that
time that the selectboard was terminating his employment.


¶ 6.            
On April 4, 2012, the Town issued a press release announcing plaintiff’s
termination, stating that “[t]he Manager holds office at the will of the Board”
and “the Town terminated . . . [plaintiff] for certain
actions . . . that went directly against the will of the
Board and were misrepresented by . . . [plaintiff] to the
Board.”  Rust calculated that the proposed lease would have resulted in a
substantial loss for the Town, and the Town eventually negotiated a more
favorable lease.


¶ 7.            
Plaintiff filed suit against the selectboard and its individual members,
claiming: (1) wrongful termination; (2) deprivation of due process of law in
violation of the Civil Rights Act, 42 U.S.C. § 1983; (3) violation of
Chapter I, Article 4 of the Vermont Constitution; and (4) promissory
estoppel.  Plaintiff sought a preliminary injunction reinstating him as
town manager; compensatory and punitive damages; and attorney’s fees and costs. 
After a hearing, the trial court refused to grant a preliminary injunction on
the ground that plaintiff had an adequate remedy at law and was not entitled to
equitable relief.  The Town filed a motion for partial summary judgment on
the counts of plaintiff’s complaint for which he sought reinstatement or
damages for his termination, and the trial court granted this motion.  The
court held that plaintiff has no legal interest in his employment because his
employment was at will; the selectboard members are entitled to qualified
immunity for their alleged violation of the Civil Rights Act, 42 U.S.C.
§ 1983; plaintiff has no private right of action for a violation of
Chapter I, Article 4 of the Vermont Constitution; and plaintiff failed to
satisfy all the required elements of promissory estoppel.[3]  This appeal followed.


¶ 8.            
“We review summary judgment decisions de novo, using the same standard
as the trial court.”  Demag v. Better Power Equip., Inc., 2014 VT
78, ¶ 9, ___ Vt. ___, 102 A.3d 1101.  Summary judgment will be
granted when, viewing the evidence in the light most favorable to the nonmoving
party, “there exist no genuine issues of material fact and the moving party is
entitled to judgment as a matter of law.”  Id. (quotation omitted);
see V.R.C.P. 56(a).


¶ 9.            
Before we turn to the specific claims, we stress that the lynchpin of
this appeal is whether plaintiff could be terminated for any reason or only for
cause.  This question is controlled by 24 V.S.A. § 1233, the statute
providing for termination of a town manager in the absence of a contract
between the manager and the town.  On this central question, plaintiff
claims that the statute allows removal only for cause and that the Town lacked
cause for his termination.  He further argues that because he could be
removed only for cause, he was entitled as a matter of due process to notice of
the alleged cause for removal and a hearing at which he could contest the
presence of cause, and that he did not receive these procedural
protections.  The Town, in turn, argues that plaintiff’s employment as
town manager was terminable at will under § 1233 and that, because it was
terminable at will, plaintiff had no property interest in his job and no right
to due process.  These positions frame the central issue in this appeal.


¶ 10.        
The Town raised additional grounds on which it asserts it should prevail
even if it loses on the lynchpin issue.  With the exception of qualified
immunity, these grounds were not considered by the trial court.  For the
reasons discussed below, we conclude that the summary judgment record is too
limited to consider these additional grounds.  We do consider whether the
selectboard members are entitled to qualified immunity, but leave the
consequence of such a holding to the trial court.


I. 
Wrongful Termination


¶ 11.        
With this background in mind, we turn first to plaintiff’s wrongful
termination claim.  Plaintiff claims that he could be removed only for cause
but that he was terminated for no cause and is entitled to relief.  The
resolution of this issue depends upon the interpretation of 24 V.S.A.
§ 1233, which provides, in relevant part, that the town manager “shall be
subject to the direction and supervision and shall hold office at the will of
such selectmen, who, by majority vote, may remove him at any time for
cause.”  We are confronted with a statutory provision that appears
internally inconsistent, both stating that the town manager serves at the will
of the selectboard and requiring cause for removal.  The trial court
attempted to reconcile the conflicting terms, concluding that a town manager
may be hired either at will pursuant to the statute or under a contract that
modifies the statutory provision by providing for a specific employment
duration.  It then reasoned that if the town manager is hired at will, the
selectboard may terminate that person at any time for any reason—with or
without cause—but if the town manager has negotiated a contract for a fixed
term, the selectboard can remove that person only for just cause.  Because
the court found no contract here, it concluded that plaintiff’s employment was
at will.


¶ 12.        
We start with the plain language of the statute and will enforce it according
to its terms if the language is clear and unambiguous.  In re Porter,
2012 VT 97, ¶ 10, 192 Vt. 601, 70 A.3d 915.  Although both parties
assert that the language of § 1233 is clear, we cannot agree that a
statute with contradictory terms is unambiguous.  We therefore must look
beyond the plain language to determine the legislative intent, either probing
into the legislative history or resorting to canons of statutory
construction.  Id.  In this process, we are dealing with a
statute that was enacted in 1917, see 1917 No. 104, §§ 2, 6; was codified
in 1918, see 1918 G.L. § 4055; and has not been amended since.  We
have no direct evidence of the intent of the 1917 Legislature. 
Accordingly, we must determine the intent from the context of the statute in
its entirety, Brownington Ctr. Church v. Town of Irasburg, 2013 VT 99,
¶ 9, 195 Vt. 196, 87 A.3d 502, as it existed when drafted and as it exists
today.


¶ 13.        
Part of the statute’s context is the meaning of the words and phrases
used at the time of its enactment in relation to the meaning of those words and
phrases today.  Many of our modern terms-of-art likely would be foreign to
the nineteenth- and early-twentieth-century drafters.  The terms “at the
will of” or “at will” as used today clearly connote employment that is
terminable at any time for any reason.  See, e.g., Handverger v. City
of Winooski, 2011 VT 130, ¶ 2, 191 Vt. 556, 38 A.3d 1153 (mem.)
(defining at-will employee as one who may be dismissed at any time without
cause).  The term, as it relates to employment,[4] is not used in Vermont’s statutes at
least through the 1940s[5]
and received only brief mention in our early case law.  See Mullaney v.
C.H. Goss Co., 97 Vt. 82, 87, 122 A. 430, 432 (1923) (discussing at-will
presumption for employment contract with indefinite duration); Rutter v.
Burke, 89 Vt. 14, 26, 93 A. 842, 848 (1915) (stating that “an authority to
remove for cause excludes the power to remove at will”).


¶ 14.        
Although the “at will” terminology may not have been employed widely by
the Court or the Legislature, the concept of at-will employment was
recognized in a number of early statutes.  The Legislature, however, used
the terms “at the pleasure of” or “during the pleasure of” to signify at-will
employment.  See, e.g., 1933 P.L. § 396 (“The
governor . . . shall appoint an executive clerk and an
executive messenger for the term of two years to serve him when the general
assembly is in session and may remove them at pleasure.”); 1906 P.S. § 347
(“Said [state fair] commission may appoint and remove at pleasure a
superintendent . . . and may prescribe their duties and fix
their compensation.”); 1894 V.S. § 4001 (“[The] board of directors [of the
bank] shall have the general management of the affairs of the
association . . . and may appoint a cashier and such other
officers and agents as their business requires, and remove them at pleasure.”);
1840 R.S. ch. 68, § 1 (“There shall be an inspector general of beef and
pork, to be appointed by the governor, and to be by him removed at pleasure.”);
see also First Nat’l Bank v. Briggs’ Assignees, 69 Vt. 12, 19-20, 37 A.
231, 233 (1894) (discussing authority of appointing power to remove appointee
who is terminable at pleasure).  But, prior to at least 1947, the town
manager statute was the only Vermont statute to use the phrase “at the will
of.”  On the other hand, “pleasure” was used liberally both before and
after 1917.  In fact, § 1233 remains the only statutory provision to
use the term “at the will of” with respect to employment.  The failure of
the Legislature to use the traditional language to describe the power to
terminate employment without cause, and the lack of any precedent for the
terminology used, suggests that the Legislature may have viewed the language as
having a different meaning from what it means today.


¶ 15.        
While the “at will” terminology is virtually absent in Vermont’s early
laws, the term “for cause” appears quite frequently, including alongside the
town manager statute in the codification of laws regulating town
officers.  See 1917 G.L. § 3992 (“[T]he overseer of the poor shall be
under the control and direction of the selectmen, and may, for cause, be
removed by them.”).  And the term was recognized by the courts as placing
a limit on the discretion of employers to terminate employment at will. 
See Rutter, 89 Vt. at 26, 93 A. at 848 (stating that under city charter
that requires cause for removal “there must be something which in law amounts
to incapacity, negligence or bad conduct, to sustain the removal”).  The
Legislature continues to use the term “for cause” as a limit on an employer’s
removal power, even absent use of the word “only.”  See, e.g., Turnley
v. Town of Vernon, 2013 VT 42, ¶¶ 13-19, 194 Vt. 42, 71 A.3d 1246
(recognizing that 24 V.S.A. § 1931(a), which states that officers “shall
hold office during good behavior, unless sooner removed for cause,” authorizes
town to remove police chief only for cause).  Clearly the Legislature
was cognizant of the term “for cause” and its import and must have been aware
of the force it would have when incorporated into the removal provision of the
town manager statute.  We believe this word choice fairly signals the
Legislature’s intent to limit the selectboard’s removal power.  C.f. Longe
v. Boise Cascade Corp., 171 Vt. 214, 223, 762 A.2d 1248, 1256 (2000)
(concluding that legislative intent was clear because Legislature knows how to
impose duties on employers and create equitable tolling provisions but chose
not to with respect to workers’ compensation statute).


¶ 16.        
The dissent rebuts our reasoning that the “at the will of” terminology
may have held a different meaning to the Vermont Legislature a century ago by
detailing the history of the at-will employment doctrine and citing to a number
of out-of-state cases that recognize this doctrine.  Post,
¶¶ 70-83.  We do not dispute the dissent’s conclusion that the
doctrine was well-established nationally, nor do we contest that other states
used the at-will terminology more freely.  Rather, we merely observe that,
in light of our own research into early Vermont laws, the term as used in the
town manager statute had a different meaning to the Legislature than it likely
would if the statute was enacted today.


¶ 17.        
The organizational structure of the town manager act, entitled “An Act
to Authorize the Employment of General Town or Municipal Mangers,” also
supports this analysis.  1917, No. 104.  The 1917 Act was
comprehensive and contained thirteen sections.  Id.  The
statutory language before us today was separated into two parts and located in
different sections of the Act.  Section 2 provided, in pertinent part:


Said manager shall, in all matters be
subject to the direction and supervision and shall hold office at the will
of the selectmen, and shall be selected with special reference to his
education, training and experience to perform the duties of such office, and
shall be appointed without reference to his political belief; and said
appointee may or may not be a resident of the town, for which he is appointed.


Id. § 2 (emphasis
added).  Section 6 provided: “The selectmen may, by majority vote, remove
the general manager at any time for cause.”  Id. § 6
(emphasis added).  The placement of the terms “at the will of” and “for
cause” in separate sections suggests that the Legislature believed they
addressed distinct subjects and that § 2 did not deal with termination of
the town manager.  Indeed, the Town’s argument requires us to accept that
the Legislature included a separate section that was superfluous and
unnecessary. 


¶ 18.        
The Legislature authorized a new codification of Vermont laws in 1917.[6]  That codification merged the language
from § 2 together with the language from § 6 in one sentence,
creating the apparent conflict and ambiguity before us.  We presume that a
codification does not intend to change the substance of the law “unless the
contrary clearly appears.”  Town of Cambridge v. Town of Underhill,
124 Vt. 237, 240, 204 A.2d 155, 157 (1964); see also Weale v. Lund, 2006
VT 66, ¶ 8, 180 Vt. 551, 904 A.2d 1191 (mem.) (same); State v. Brennan,
172 Vt. 277, 282, 775 A.2d 919, 923 (2001) (same).  The contrary does not
appear in this case.


¶ 19.        
On this point, we note one final piece of support.  Numerous
statutes enacted across the country in the nineteenth and early twentieth
centuries contained, in various contexts, a general statement that a particular
official holds office and employment “at the will of” or “at the pleasure of”
the appointing officer and also contained some limitation on the ability of the
appointing officer to terminate without cause.  See, e.g., Colo. Rev.
Stat. Ann. § 31-4-210 (“The city manager shall be appointed for an
indefinite term, but he may be removed at the pleasure of the city council for
cause.”); N.H. Rev. Stat. Ann. § 37:3 (virtually same language as 24
V.S.A. § 1233); Mich. Comp. Laws Ann. § 791.203 (“[The director of
corrections] shall hold office at the pleasure of the commission except that he
may be removed for cause and only after a public hearing before the
commission.”); R.I. Gen. Laws Ann. § 45-4-1(c) (“[T]he town council [is
entitled] to appoint a tax collector who shall serve at the pleasure of the
town council and who may be removed for cause
shown . . . .”).  We think it unlikely that so many
legislatures would have overlooked these internal inconsistencies unless, in
their view, the terms held a different meaning.


¶ 20.        
We also consider whether an interpretation requiring cause for removal
is reasonable in light of other canons of statutory construction. 
Particularly, we are concerned with whether requiring cause for removal renders
the term “at the will of” mere surplusage.  See In re Beliveau NOV,
2013 VT 41, ¶ 13, 194 Vt. 1, 72 A.3d 918 (“Generally, we do not construe a
statute in a way that renders a significant part of it pure surplusage.”
(quotation omitted)).  We think not.  As discussed above, evidence
suggests “at the will of” was not meant in the modern conventional sense. 
We think this term reasonably can be read to indicate that it is the
selectboard—and no other authority—that may remove the town manager and
that the selectboard has the discretion to initiate termination.  We note
that, in support of this construction, the statute established no process for
termination, but the requirement for cause is still a limitation on the
discretion of the selectboard.  This reading is consistent with that
statute’s limitation on the selectboard’s discretion in selecting a town
manager.  See 1917, No. 104, § 2 (requiring selectboard to consider
education, training, and experience when selecting town manager and prohibiting
selectboard from considering town manager’s political belief).


¶ 21.        
Adopting the Town’s reading of the statute, however, would render the
term “for cause” superfluous.  The at-will employment doctrine inherently
allows the employer to terminate employment either with or without cause. 
There would be no reason to further specify that an employee with an at-will
contract may be terminated for cause.


¶ 22.        
We also consider whether our interpretation adds implied conditions to
§ 1233.  See Brennan v. Town of Colchester, 169 Vt. 175, 177,
730 A.2d 601, 603 (1999) (“We will not read an implied condition into a statute
unless it is necessary in order to make the statute effective.”
(quotation omitted)).  Again, we think not.  The Town argues that
plaintiff’s reading requires that the word “only” be read into the phrase
requiring cause.  Nowhere in our statutory or common law do we find
precedent to support the contention that the term “for cause” must be qualified
by the term “only” to have any legal force.


¶ 23.        
In its brief, the Town provided us with a litany of cases in support of
its construction, none of which we find availing.  None of the statutory
provisions at issue in those cases presented the internal inconsistency we find
in § 1233, and the courts in those decisions found ample additional
evidence of legislative intent to authorize at-will termination.  We
choose to discuss one of these cases from our own Court that provides support
for our holding here.


¶ 24.        
In Brennan, we looked at 24 V.S.A. § 4323(a), which stated
that “[t]he term of each member [of the planning commission] shall be for four
years . . . [and a]ny member may be removed at any time by
unanimous vote of the legislative body.”  169 Vt. at 176, 730 A.2d at
603.  The commission members argued that because the statute specified a
fixed term, they could be terminated only for cause.  We disagreed and
concluded that the phrase “any time by unanimous vote” meant that the
commission members could be removed for any reason, with or without
cause.  Id. at 178, 730 A.2d at 604.  We supported that
interpretation with evidence from other provisions of the Planning and
Development Act that required removal “for cause,” noting that the Legislature
understood the distinction between removing municipal officers without cause
and for cause.  Id.  In Brennan, unlike here, the magic
words—“for cause”—were not present in the statute.  Although there is a
presumption that contracts for definite terms require cause for removal, id.
at 177, 730 A.2d at 604, it is merely a presumption and nothing more. 
This presumption was overcome by other evidence within both the individual
provision and the entire statutory scheme.  Id. at 177-78, 730 A.2d
at 604.


¶ 25.        
In Brennan, we rejected the planning commission members’ argument
that “the threat of [removal without cause] would interfere with the impartial
and independent exercise of their duties” on the ground that the Legislature
has made clear its intent to authorize at-will termination.  Id. at
179, 730 A.2d at 604.  Plaintiff similarly asserts that removal without
cause would interfere with the town manager’s ability to exercise his
“independent authority to run the day-to-day affairs of the town” and that
therefore we cannot interpret the statute to permit at-will termination. 
We decline to go that far, and we stand by our statement in Brennan. 



¶ 26.        
Finally, on this issue, we address the trial court’s construction of the
statute.  The court attempted to reconcile the phrases of the statutory
sentence at issue.  While we support the court’s approach in reconciling
seemingly conflicting language, we cannot agree with its conclusion that the
basic employment relationship defined by the statute is one of at-will
employment.  Thus, we have not adopted the court’s decision.


¶ 27.        
The dissent offers one method of reconciling the contradictory
terminology that it claims is more faithful to the language used by the
drafters.  In the dissent’s view, “for cause” as used in § 1233
requires only that the selectboard furnish the former town manager with a
statement of its grounds for removal, but not a hearing or other due process
protections.  Post, ¶ 83.  According to the dissent, this
approach “preserves the efficiency of the at-will doctrine in municipal
employment while also providing at least a basis for the town manager—and
ultimately the public—to judge the wisdom and merits of the decision.”  Post,
¶ 83.  


¶ 28.        
In support of its proposition, the dissent cites three Massachusetts
cases, post, ¶¶ 79-82, none of which we find applicable.  The
Massachusetts Supreme Judicial Court contemplated two statutes that employ the
language “for such cause as [the board] may deem sufficient,”  O’Dowd
v. City of Boston, 21 N.E. 949, 949 (Mass. 1889); Ray v. Mayor of
Everett, 103 N.E.2d 269, 271 (Mass. 1952), and concluded that this language
vests broad removal authority in the board to remove at its pleasure. 
Essentially, the court created a qualified at-will removal power—qualified only
by the requirement that the board state the reason for removal.  The
Appeals Court of Massachusetts addressed a more modern statute in Fabrizio
v. City of Quincy, 404 N.E.2d 675 (Mass. App. Ct. 1980), which authorized
the mayor to “remove the head of a department or member of a board by filing a
written statement with the city clerk setting forth in detail the specific
reasons therefor.”  Id. at 676 (quotation omitted).  The court
reached the same conclusion as in O’Dowd and Ray, noting that the
reasons provided in the statement need not be true but merely “reasons for
which removal may lawfully be made.”  Fabrizio, 404 N.E.2d at
677.  The only “hearing” afforded to the former employee is within the
court of “public opinion.”  Fabrizio, 404 N.E.2d at 677; O’Dowd,
21 N.E. at 950.


¶ 29.        
We find the application of these cases to our own statute
unpersuasive.  First, the language and structure of the Massachusetts
statutes are distinguishable from § 1233.  The dissent points out
that the statutes differ but opines that “they nevertheless suggest a useful
general approach to reconciling the latter’s seemingly conflicting
terms.”  Post, ¶ 83.  One may argue that the logic of the
courts’ interpretation of the Massachusetts statutes is applicable here; the
“at the will of” language may be read to embody the same limiting principles as
the “deem sufficient” language.  This reading, however, fails to account
for the pre-codification structure of § 1233, which placed the terms “at
the will of” and “for cause” in separate and distinct paragraphs dealing with
different subject matters.  The language “for any reason [the board] may
deem sufficient” in the Massachusetts statutes clearly modifies the term “for
cause,” thereby limiting its effect.  The conflicting terms in § 1233
are not so related, and our historical research suggests they were not intended
to be.


¶ 30.        
Furthermore, the dissent cites no Vermont case that allows for such a
constrained reading of “for cause.”  In fact, Rutter, 89 Vt. at 26,
93 A. at 848, which was decided contemporaneously with the passage of
§ 1233, cites another Massachusetts case, Ayers v. Hatch, 56 N.E.
612 (Mass. 1900), that considers the same “deem sufficient” language as the
aforementioned statutes.  We cited to Ayers for the concept that
removal for cause “repelled the idea of removal at pleasure.”  Rutter,
89 Vt. at 26, 93 A. at 848 (citing Ayers, 56 N.E. at 613).  Ayers
goes on to hold that the statute at issue did not require notice and hearing
but only that there be “good ground” for removal.  Ayers, 56 N.E.
at 613.  Contrary to the Ayers construction, we acknowledged in Rutter,
in the face of a charter provision with very similar language—“shall seem
sufficient”—that “[i]nquiries involving removal for cause being of a judicial
nature, the person charged is entitled to notice, and an opportunity to be
heard, and a reasonable time to prepare his defense.”  Rutter, 89
Vt. at 28, 98 A. at 849.  While the dissent would have us adopt the
constrained reading of the Massachusetts statutes, we did not adopt that
reading in Rutter or elsewhere, even when confronted with similar
language.  Rather, Rutter highlights the force that the “for cause”
language had in Vermont law at the time § 1233 was enacted.


¶ 31.        
Finally, we are not convinced that the court of “public opinion” is an
adequate forum for adjudicating a town manager’s wrongful termination
claim.  We think this interpretation nullifies the purpose of the for
cause requirement and the legal force the term has had over the last
century.  Whether a cause for removal is placed on the record or not, the
actions of a municipal board are always subject to public scrutiny.  We
fail to see how this method encourages proper termination.  More importantly,
public opposition that results in not reelecting a selectboard member does not
provide any remedy for a wrongfully terminated town manager.  We therefore
conclude that § 1233 requires a town manager be removed only for cause.


¶ 32.        
Having determined that § 1233 allows termination of a town manager
only for cause, we address the Town’s argument that cause existed in this
case.  Because the trial court found that plaintiff was an at-will
employee, it did not address the Town’s position.  The statement of the
selectboard following the meeting in which plaintiff was terminated was: “The
Town terminated Mr. Nelson for certain actions performed by Mr. Nelson that
were directly against the will of the Board and were misrepresented to the Board.” 
The actions that were “against the will of the Board” and “misrepresented to
the Board” were not specified.  Plaintiff testified at the hearing on the
preliminary injunction that the only issues raised in executive session prior
to the selectboard’s vote related to the Pomerleau Building and that the
selectboard exceeded its powers in second-guessing plaintiff’s actions with
respect to the Pomerleau Building.  In their depositions, selectboard
members testified that other issues were discussed.


¶ 33.        
Having held for the first time in this decision that cause is required
for termination under § 1233, it necessarily follows that we have not
defined what could be considered sufficient “cause” under § 1233. 
Cf. Turnley, 194 Vt. at 50-53, 71 A.3d at 1253-55 (determining what type
of conduct qualifies as unbecoming of police officer and justifies dismissal
for cause).  Based on the record and the positions of the parties, we
conclude that, however cause may be defined, summary judgment would be inappropriate
because there exists a dispute of material facts with respect to the
circumstances under which plaintiff was dismissed.  The official vote of
the selectboard was that it had no confidence in the town manager.  Only
through the statement that it issued to the press do we understand that the
vote meant that it had terminated plaintiff’s employment.[7]  The selectboard’s statement did not
specify what actions were against the will of the selectboard and were
misrepresented.  On this record, we cannot determine what were the grounds
for plaintiff’s termination, if any, and whether the grounds existed.


¶ 34.        
We reverse the trial court’s grant of summary judgment to the Town and
hold that § 1233 requires cause for removal of town managers.  We
remand to the trial court to determine whether plaintiff was wrongfully
terminated under this standard.


II. 
Civil Rights Act


¶ 35.        
We turn next to plaintiff’s due process claim.  Plaintiff claims
that the selectboard members deprived him of his right to due process of law
when they terminated his employment without cause and that this action violated
the Civil Rights Act, 42 U.S.C. § 1983.  He argues that § 1233
vested in him a property interest in his employment that could be terminated
only for cause with proper notice of the charges against him and an opportunity
to be heard.  The Town’s primary argument was that the statute authorized
no-cause termination and therefore no process was due, and the trial court
accepted this argument.  The Town, however, has made a number of
additional arguments that: (a) plaintiff received notice of the cause for his
discharge; (b) plaintiff received a pre-termination hearing consistent with due
process; (c) plaintiff waived any right to further process; and (d) the
availability of review in the trial court under Vermont Rule of Civil Procedure
75 met the requirement for post-termination due process.  None of these
arguments were addressed by the trial court.  


¶ 36.        
To maintain a due process action, plaintiff must show that he has a
constitutionally protected right to employment as town manager.  See Quinn
v. Grimes, 2004 VT 89, ¶ 8, 177 Vt. 181, 861 A.2d 1108.  We
previously have recognized that an employee has a constitutionally protected
property interest in employment when the employee “is entitled to a benefit
created and defined by a source independent of the Constitution, such as a
state law.”  Id. (quotation omitted).  Employees who are
statutorily entitled to employment unless removed for cause have a property
interest and “the government may not impinge this right without notice and an
adequate opportunity to be heard.”  Herrera v. Union No. 39 Sch. Dist.,
2006 VT 83, ¶ 25, 181 Vt. 198, 917 A.2d 923; see also Ohland v. City of
Montpelier, 467 F. Supp. 324, 339 (D. Vt. 1979) (“Because he could have
been discharged only for cause, plaintiff had a property interest in his
employment that was entitled to constitutional protection.”).  As we held
above, § 1233 authorizes the selectboard to remove the town manager only
for cause, entitling plaintiff to notice of the charges against him and an
opportunity for a hearing.


¶ 37.        
Once plaintiff has shown a constitutionally protected right to
employment, he must then demonstrate that the Town deprived him of that right
without adequate notice and opportunity to be heard.  Quinn, 2004
VT 89, ¶ 8.  To meet his burden, plaintiff focuses primarily on the
pre-termination process, alleging that the selectboard never specified the
grounds for his termination and that he never had the opportunity to respond to
those grounds.  The Town answers that plaintiff had multiple notices of
his deficiencies and had an opportunity to respond to them in the executive
session held immediately before the vote to terminate him.  Plaintiff’s
pre-termination rights are explained in the United States Supreme Court case of
Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), as
“oral or written notice of the charges against him, an explanation of the
employer’s evidence, and an opportunity to present his side of the
story.”  Id. at 546.


¶ 38.        
We have applied the requirements of Loudermill in both In re
Hurlburt, 2003 VT 2, ¶¶ 28-31, 175 Vt. 40, 820 A.2d 186 (determining whether
employee was terminated for reasons specified in dismissal letter, as required
under Loudermill), and Quinn, 2004 VT 89, ¶ 24.  This
case is similar to Quinn, where the employer and employee had a meeting,
initiated by the employee, but gave very different accounts of what occurred in
the meeting.  We held that the question of whether the employer complied
with the Loudermill requirements could not be decided on summary
judgment in view of the different accounts.  Quinn, 2004 VT 89,
¶ 28.  We summarized that “[a]lthough we can provide some guidance on
these arguments, we believe it preferable that the superior court consider them
in the first instance, particularly because the record is so sparse and some
additional factual development will be necessary for a decision, by summary
judgment or otherwise.”  Id. ¶ 21.  We think that holding
also applies here.  


¶ 39.        
We reach a similar conclusion with respect to the Town’s claims about
the post-termination process—that plaintiff waived any right to further process
and that his rights were adequately protected by his ability to appeal to the
trial court under Rule 75.  The summary judgment record is silent on what
occurred after the selectboard terminated plaintiff on April 3, 2012. 
There is no indication that plaintiff had available any post-termination
process within the Town government, and there is no indication that he sought
any such process.  We cannot decide on whether there was a waiver as a
matter of law on a silent record.  


¶ 40.        
We are also, on this record, unwilling to determine whether the trial
court review under Rule 75 provided an adequate remedy.  The parties have
very different visions of how Rule 75 review would proceed, and those visions
are affected by the process provided or available from the Town and “the nature
of the process due prior to termination of employment.”  Id.
¶ 20.  The Town urges us to follow the decision of the United States
Court of Appeals for the Second Circuit in Connolly v. City of Rutland,
No. 11-3953-cv, 2012 WL 5382215 (2d Cir. Nov. 5, 2012), in which the court held
that a pre-termination hearing followed by Rule 75 review complied with due
process.  Id. at *1.  Even if we were to conclude that Rule 75
review is in all cases an adequate post-termination hearing, Connolly
holds that such review is adequate only if there is a sufficient
pre-termination hearing.  See also Quinn, 2004 VT 89, ¶ 29
(observing that “the nature of the process due prior to the termination of
employment is affected  by the nature and availability of post-termination
process”).  Because we cannot resolve whether there was an adequate
pre-termination hearing here, we cannot judge whether Rule 75 review would be
an adequate post-termination process.


¶ 41.        
We reverse the trial court’s grant of summary judgment to the Town on
plaintiff’s Civil Rights Act claim based on a denial of due process and remand
for further factual development on whether plaintiff received the process he
was due and whether he waived the right to all or any of that process.


III. 
Vermont Constitution


¶ 42.        
We turn next to plaintiff’s claim under Chapter I, Article 4 of the
Vermont Constitution, which provides:


  Every person within this state
ought to find a certain remedy, by having recourse to the laws, for all
injuries or wrongs which one may receive in person, property or character;
every person ought to obtain right and justice, freely, and without being
obliged to purchase it; completely and without any denial; promptly and without
delay; conformably to the laws.


Vt. Const., ch. I, art. 4. 
Plaintiff claims that the Vermont Constitution provides him with the same due
process protections as the United States Constitution and that when the
selectboard allegedly deprived him of his employment without due process, that
deprivation offended the guarantees of Article 4.  The Town contends that
Article 4 does not provide a private right of action.  The trial court
agreed with the Town and granted its motion for summary judgment.  We
disagree with the trial court and reverse the grant of summary judgment to the
Town.


¶ 43.        
The trial court relied on Billado v. Parry, 937 F. Supp. 337 (D.
Vt. 1996), which states that “[t]he Vermont Supreme Court has held that no
private right of action is available to enforce Article[] 4.”  Id.
at 345.  The District Court of Vermont, in turn, cited Rowe v. Brown,
157 Vt. 373, 599 A.2d 333 (1991), for that proposition.  This is a
fundamental misreading of Rowe.  Actually, Rowe held that
Article 4 does not provide additional private tort remedies to a plaintiff
whose public right to open meetings has been violated.  Id. at 379,
599 A.2d at 337.  The holding in Rowe merely defined the scope of
Article 4; it did not state that Article 4 can never be the basis of an action.


¶ 44.        
We consistently have held that due process rights flow from Article
4.  See, e.g., Quesnel v. Town of Middlebury, 167 Vt. 252, 258, 706
A.2d 436, 439 (1997) (“We have considered Article 4 the equivalent to the
federal Due Process Clause. . . .  It does not create
substantive rights, however; it merely provides access to the courts.”). 
Where a substantive right—e.g., a property interest—already exists, conferred
by statute or common law, Article 4 can protect a plaintiff against deprivation
of that right without due process.  See Handverger, 2011 VT 130,
¶ 12 (stating that Article 4 “require[s] adequate access to judicial
process to vindicate the interest for which due process protection is sought”
(quotation omitted)).


¶ 45.        
The question of whether a private right of action can be based on a
provision of the Vermont Constitution may be bifurcated into two
questions.  The first is whether the constitutional provision is
self-executing—that is, whether a plaintiff can bring an action for a violation
of the provision without implementing legislation.  The second is whether
the remedy that a plaintiff seeks, typically damages, exists for the violation.


¶ 46.        
As we articulated in Shields v. Gerhart, 163 Vt. 219, 658 A.2d 924
(1995), a Vermont constitutional provision is self-executing “if it supplies a
sufficient rule by means of which the right given may be enjoyed and
protected, . . . and it is not self-executing when it
merely indicates principles, without laying down rules by means of which those
principles may be given force of law.”  Id. at 224, 658 A.2d at 928
(quoting Davis v. Burke, 179 U.S. 399, 403 (1900)).  We further
explained that “a self-executing provision should do more than express only
general principles; it may describe the right in detail, including the means
for its enjoyment and protection.”  Id.  In Shields, we
held that Article 1, which states that “all men are born equally free and
independent, and have certain natural, inherent, and unalienable rights,” is
not self-executing because it does not establish enforceable rights “but merely
lists [them] to flesh out philosophical truisms.”  Id. at 224-25,
658 A.2d at 928.


¶ 47.        
On the other hand, we concluded that Article 13, which states that “people
have a right to freedom of speech,” is self-executing because it “unequivocally
expresses more than general principles alone.  It sets forth a single,
specific right of the people to make themselves heard, a fundamental
characteristic of democratic government.”  Id. at 226-27, 658 A.2d
at 929-30.  That, coupled with the absence of a legislative directive,
supported our conclusion that Article 13 is self-executing.  Id.


¶ 48.        
We reinforced this test for determining whether a provision is self-executing
in In re Town Highway No. 20, 2012 VT 17, 191 Vt. 231, 45 A.3d 54, where
we considered whether Article 7, which provides that the “government is, or
ought to be, instituted for the common benefit, protection, and security of the
people, nation, or community,” is self-executing.  Id.
¶ 30.  There, we concluded that Article 7, like Article 13,
“expresses a similarly fundamental right” and that right is “so certain and
definite in character as to form rules for judicial decisions.”  Id.
¶ 32.


¶ 49.        
We start with the recognition that Shields essentially decided
the question before us.  In holding that Article 1 is not self-executing,
we interpreted it to state fundamental general principles, the terms of which
are stated elsewhere in the Vermont Constitution.  Shields, 163 Vt.
at 224, 658 A.2d at 928.  We identified one of those general principles as
due process, as defined in Article 4.  Id. at 226, 658 A.2d at
929.  In essence, we held that the statement in Article 4 conferring due
process rights is self-executing.


¶ 50.        
We recognize that we are dealing with a very broad concept, stated in
language from an earlier century.  As we have stressed in its application,
Article 4 is about access to the judicial branch to enforce the law.  See Holton
v. Dep’t of Emp’t & Training, 2005 VT 42, ¶ 27, 178 Vt. 147, 878
A.2d 1051.  We cannot believe that the drafters of Article 4 intended that
judicial access be denied by legislative inaction in creating an enforcement
mechanism.  Indeed, denial of access to the courts is a violation of the
substantive requirements of the Article.


¶ 51.        
The principles of due process have been developed and applied in
thousands of decisions from the state and federal courts.  To say that the
language from which these principles are drawn is too vague and general to
enforce ignores the immense body of law.  While that law did not exist
when the constitutional provisions were written, we believe that this growth
and development was intended by the drafters.  In this way, we find
Article 4 no more broad or general than Article 7, which we held as
self-executing in Town Highway No. 20.


¶ 52.        
In support of our reasoning, we note that other state courts that have
considered the question generally have found that the due process provisions of
their state constitutions are enforceable by appropriate court action even
without implementing legislation.  See, e.g., Katzberg v. Regents of
Univ. of Cal., 58 P.3d 339, 342-43 (Cal. 2002) (holding that due process
clause is self-executing because “[i]t is clear
that . . . even without any effectuating legislation, all
branches of government are required to comply with its terms”); In re
Wretlind, 32 N.W.2d 161, 167 (Minn. 1948) (stating that “prohibitive
clauses of the constitution such as the due process clause are self-executing
and require no legislation for their enforcement”); Dorwart v. Caraway,
2002 MT 240, ¶ 20, 58 P.3d 128 (recognizing that plaintiff can bring
action under due process clause of state constitution).  For example, in Spackman
v. Board of Education, 2007 UT 87, 16 P.3d 533, the Utah Supreme Court held
that the due process clause of its state constitution, which provides that
“[n]o person shall be deprived of life, liberty or property, without due
process of law,” is self-executing because its terminology is mandatory and
prohibitory.  Id. ¶¶ 10-11.  The court further explained
that “although the right to due process is expressed in relatively general
terms, it is both judicially definable and enforceable.”  Id.
¶ 12.  The Maryland Court of Appeals reached the same result in Widgeon
v. Eastern Shore Hospital Center, 479 A.2d 921 (Md. 1984), where it held
that a state constitutional provision similar to our Article 4—which states
“[t]hat no man ought to be . . . deprived of his life,
liberty or property, but by the judgment of his peers, or by the Law of the
land”—gives rise to a private right of action.  Id. at 923 n.5,
930.  We therefore hold that Chapter I, Article 4, of the Vermont
Constitution is self-executing and that plaintiff properly invoked the Article
in his complaint.


¶ 53.        
We stress, however, what we have not decided.  We have not
addressed the remedy plaintiff might receive if he proves a violation of the
provision.  Second, we have not addressed the merits of plaintiff’s
claim.  We have characterized Article 4 “as the Vermont equivalent of the
federal constitution’s Due Process Clause,” Holton, 2005 VT 42,
¶ 27, and have interpreted it “as requiring adequate access to judicial
process.”  Id.  But we have almost no precedents in which
Article 4, rather than the Fourteenth Amendment to the United States
Constitution, is the primary basis for decision and none in which the party
invoking Article 4 is seeking relief within or because of an administrative
process.  To the extent that Article 4 may become the primary basis for
relief in this case, the trial court will have to address how it meets the
claims and facts before it.


¶ 54.        
We reverse the trial court’s grant of summary judgment to the Town and
hold that plaintiff is entitled to due process under Chapter I, Article 4 of
the Vermont Constitution.  We remand to the trial court to decide if the
selectboard furnished plaintiff with adequate notice and hearing upon
termination.


IV. 
Promissory Estoppel


¶ 55.        
Finally, we address plaintiff’s promissory estoppel claim. 
Plaintiff claims that the Town’s attorney informed him that he could be
terminated only “with cause” and essentially told him “that he would have to be
guilty of gross abuse of municipal funds and official discretion before
plaintiff could be fired.”  Plaintiff also claims that he relied on those
statements to his detriment by accepting the town manager position and
purchasing a home.  The Town does not dispute that its attorney made these
statements but argues that plaintiff did not otherwise establish the elements
of promissory estoppel.[8] 
The Town argues that the attorney was not authorized to make promises on behalf
of the selectboard, that the promises were nothing more than vague oral
assurances, and that plaintiff was not justified in relying on those
statements.  The trial court agreed with the Town, concluding that
plaintiff did not allege facts sufficient to demonstrate that he was entitled
to rely on the attorney’s statements or that his reliance was justifiable.[9]  Although on different grounds, we
agree with the trial court and affirm the court’s grant of summary judgment to
the Town on plaintiff’s promissory estoppel claim. 


¶ 56.        
Promissory estoppel requires “[a] promise which the promisor should
reasonably expect to induce action or forbearance on the part of the promisee
or a third person and which does induce such action or forbearance” and that
“injustice can be avoided only by enforcement of the promise.”  Woolaver
v. State, 2003 VT 71, ¶ 30, 175 Vt. 397, 833 A.2d 849 (quotation
omitted).  We have adopted the elements of promissory estoppel as set out
in the Restatement (Second) of Contracts § 90(1) (1981).  See Foote
v. Simmonds Precision Prods. Co., 158 Vt. 566, 573, 613 A.2d 1277, 1281
(1992).  According to the Restatement, “[a] promise is a manifestation of
intention to act or refrain from acting in a specified way, so made as to
justify a promise in understanding that a commitment has been made.” 
Restatement (Second) of Contracts § 2(1).  The promise must be more
than “a mere expression of intention, hope, desire, or opinion, which shows no
real commitment.”  Escribano v. Greater Hartford Acad. of Arts, 449
Fed. Appx. 39, 43 (2d Cir. 2011) (quotation omitted).  “[P]romissory
estoppel may modify an at-will employment relationship and provide a remedy for
wrongful discharge,” Foote, 158 Vt. at 571, 613 A.2d at 1280, as long as
the promise made by the employer was “of a specific and definite nature,” Woolaver,
2003 VT 71, ¶ 30 (quotation omitted), and not merely a “vague
assurance.”  Dillon v. Champion Jogbra, Inc., 175 Vt. 1, 10, 819
A.2d 703, 710 (2002).


¶ 57.        
Plaintiff has not shown the presence of a promise sufficient to avoid
summary judgment.  See Brower v. Holmes Transp., Inc., 140 Vt. 114,
117, 435 A.2d 952, 954 (1981) (stating that promissory estoppel cannot apply
where there is no promise), overruled on other grounds by Soucy v.
Soucy Motors, Inc., 143 Vt. 615, 471 A.2d 224 (1983).  At best, the
attorney was expressing his legal opinion.  Under plaintiff’s allegations,
the attorney manifested no intention to act “in a specified way” except to
provide his legal opinion to the selectboard, as he had done in the past. 
As the trial court found, the attorney never purported to speak on behalf of
the board, and thus his statements could not be attributed to the board. 
The attorney never assured plaintiff that the selectboard held the same view
regarding the statute.  We cannot conclude that the expression of a legal
opinion is a promise that the selectboard would act in a certain way.  


¶ 58.        
We therefore affirm the trial court’s grant of summary judgment to the
Town and hold that plaintiff failed to satisfy the requirements of a promissory
estoppel claim.


V. 
Qualified Immunity


¶ 59.        
The Town raised one remedy issue: whether selectboard members are
entitled to qualified immunity.  The trial court ruled
affirmatively.  We address that issue, but first place it in its proper
context.  


¶ 60.        
Based on our decisions above, plaintiff is left on remand with three
liability counts: wrongful discharge; violation of the Civil Rights Act, 42
U.S.C. § 1983; and violation of Article 4 of the Vermont
Constitution.  Plaintiff essentially sought three remedies: reinstatement
to his position as town manager, compensatory damages, and punitive damages.[10]  Each of the theories of liability
is subject to a different body of law specifying the availability of remedies
and could, for example, allow damages, or damages of a particular type, based
on some liability theories and not on others.  In general, the trial court
did not reach issues of remedies because it found no liability on any theory.


¶ 61.        
The Town raised qualified immunity in the summary judgment motion,
apparently viewing it as a complete defense to all liability theories against
the individual selectboard members and a ground for denial of all remedies.[11]  We say “apparently” because the
consequence of a determination that qualified immunity applies is not stated
explicitly, but the trial court without explanation treated qualified immunity
as an alternative ground for dismissing the termination-related counts of the
complaint.  While we accept that a finding of qualified immunity will
restrict at least some of the remedies for some of the theories of liability,
consistent with the context observation above we do not address which theories
or remedies are restricted and how.  We particularly do not rule that
qualified immunity is a complete defense to all theories and all remedies.


¶ 62.        
The Town argues that its selectboard members are entitled to qualified
immunity because they did not violate a clearly established right.  The
trial court granted summary judgment to the Town, concluding that, because
§ 1233 does not require cause for removal, plaintiff had no right to his
employment as town manager.  While we conclude that § 1233 does
require cause for removal, we cannot conclude that the law was clearly
established, and thus we hold that the selectboard members were entitled to
qualified immunity.


¶ 63.        
Public officials are entitled to qualified immunity from 42 U.S.C.
§ 1983 liability when they are: “(1) acting during the course of their
employment and acting, or reasonably believing they are acting, within the
scope of their authority; (2) acting in good faith; and (3) performing
discretionary, as opposed to ministerial, acts.”  Baptie v. Bruno,
2013 VT 117, ¶ 11, 195 Vt. 308, 88 A.3d 1212.  As we noted in Baptie,
we are guided by the doctrine’s purpose “to protect officials from exposure to
personal tort liability that could (1) hamper their ability to effectively
discharge their duties and (2) subject their discretionary determinations to
review by a judicial system ill-suited to assess the full scope of factors
involved in such determinations.”  Id. ¶ 12.


¶ 64.        
 Plaintiff does not dispute the first and third prongs of the test,
but argues that the selectboard members were not acting in good faith. 
Good faith “exists where an official’s acts did not violate clearly established
rights of which the official reasonably should have known.”  Id.
¶ 11 (quotation omitted).  We have adopted an objective standard of
good faith.  Id.


¶ 65.        
A right is clearly established when “[t]he contours of the right [are]
sufficiently clear that a reasonable official would understand that what he is
doing violates that right.”  Anderson v. Creighton, 483 U.S. 635,
640 (1987).  Clearly established rights are not limited to federal laws
but may also be found in state statutes.  Sabia v. Neville, 165 Vt.
515, 522, 687 A.2d 469, 474 (1996).  “There is no need for a case on
point, but existing precedent must have placed the statutory or constitutional
question beyond debate.”  Coollick v. Hughes, 699 F.3d 211, 220 (2d
Cir. 2012) (quotation omitted).  Thus, a mistake can be one of law or a
mixed question of fact and law, Pearson v. Callahan, 555 U.S. 223, 231
(2009), and the doctrine “gives government officials breathing room to make
reasonable but mistaken judgments about open legal questions.”  Ashcroft
v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).  It “protects all but the
plainly incompetent or those who knowingly violate the law.”  Id.
(quotation omitted).


¶ 66.        
As we stated above, § 1233 on its face appears internally
inconsistent and its terms ambiguous, and we have no case on point or other
precedent that settles the issue.  It certainly was not “beyond debate”
when the selectboard acted.  We therefore conclude that the law was not
clearly established and the selectboard is entitled to qualified immunity.
  On this point, we affirm the trial court’s grant of summary
judgment. 


Reversed and remanded for
further proceedings consistent with this opinion as to the claims of wrongful
termination, violation of due process under 42 U.S.C. § 1983, and
violation of Chapter I, Article 4 of the Vermont Constitution.  Affirmed
as to the promissory estoppel claim and the qualified immunity defense.


 




 
 

 
 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
 Associate
 Justice

 

 

 



 


 


¶ 67.        
REIBER, C.J., dissenting.   The majority’s solution to
the ambiguity inherent in 23 V.S.A. § 1233—which provides that a town
manager shall hold office “at the will of” the selectmen who “may remove him at
any time for cause”—is to conclude that “at the will of” does not mean what we
think it means.  In the majority’s view, the phrase was not understood by
its drafters “in the modern conventional sense” of an employment terminable at
any time for any reason.  Ante, ¶ 20.  In support of this
proposition, the majority claims that the at-will concept was not widely
employed in Vermont law when the statute was enacted, and that “the Legislature
may have viewed the language as having a different meaning from what means
today.”  Ante, ¶ 14.  In contrast to the relative dearth
of Vermont law employing the “at will” language, the majority cites a number of
early Vermont cases and statutes using the alternative phrase “at the pleasure
of.” 


¶ 68.        
The majority thus concludes that the “at will” language of the statute,
enacted six years before Mullaney, was actually meant to convey
something altogether different, to wit, that “it is the selectboard—and no
other authority—that may remove the town manager and that the selectboard
has the discretion to initiate termination.”  Ante,
¶ 20.  Thus, the majority holds that the “for cause” language of the
statute must control, and that—contrary to the conclusion of the trial court
here—plaintiff was terminable only for cause.


¶ 69.        
With respect, the majority’s assertion that the phrase “at the will of”
is a “modern” construct that had an entirely different meaning in 1917 does not
withstand historical scrutiny.  As explained below, the “at will” language
had precisely the same legal effect then as it does now—across the nation and
in Vermont in particular.  Thus, its accepted and conventional meaning
must be harmonized with the rest of the statute—not read out of it—to serve a
more plausible legislative purpose, one in which the “for cause” language does
not supersede the at-will provision but appropriately qualifies
it. 


¶ 70.        
It is important to recognize, at the outset, that “at the will of” or
“at will” employment was a legal phrase and construct widely used in the United
States not only in the early decades of the twentieth century, when the statute
at issue here was enacted, but in the century preceding it.  Indeed, in
the last half of the nineteenth and early years of the twentieth centuries,
courts throughout the country employed the phrase precisely as we do today, to
convey the idea of an employment terminable at any time for any reason as
opposed to one terminable only for cause.  Although far too numerous to
cite in their entirety, these early decisions include Gibbs v. City of
Manchester, 61 A. 128, 129 (N.H. 1905) (holding that, under state law, “the
[police] commissioners are not authorized to remove police officers at will,
but for good and sufficient cause, and after due hearing” (emphasis
added)); State ex rel. Fitzgerald v. Mayor of New Brunswick, 1 A. 496,
501 (N.J. 1885) (noting that the “power of removal” of police officers “may
exist in some cities at the will of some municipal officer or body of
officers” while in others the removal is only “for cause” (emphasis
added)); People ex rel. Wheeler v. Cooper, 57 How. Pr. 416, ___ (N.Y.
1879) (holding that mayor’s “power . . . to remove is for
cause, after an opportunity to be heard,” and observing that not allowing a
hearing would render the “safeguard . . . a hollow device
and a sham; because a removal could actually be made at the will of the
removing power” (emphasis added)); Smith v. Bryan, 40 S.E. 652, 653-54
(Va. 1902) (observing that “the absolute power of removal” is “a tenure at
will” as opposed to one “for cause” (emphasis added)).[12]        



¶ 71.        
Reflecting the nearly universal understanding of the at-will concept,
late nineteenth- and early-twentieth-century commentators on the law of municipal
corporations routinely utilized the phrase in its “modern” sense in
characterizing the tenure of municipal officers.  See, e.g., 2 Dillon,
Commentaries on the Law of Municipal Corporations § 473, at 79 (5th ed.
1911) (“With respect to the tenure or duration of a public employment, the
general rule is that where the power of appointment is conferred in general
terms . . . the power of removal, in the discretion
and at the will of the appointing power and without notice or a hearing,
is implied . . . .” (second emphasis added)); 2
McQuillan, Municipal Corporations § 558, at 1229 (1911) (“Unless the law
otherwise provides, if the officer is appointed . . . and
no definite term is prescribed, he holds at the will or pleasure of his
superior or the appointing . . . authority . . . .”
 (emphasis added)).  


¶ 72.        
Thus, as one more recent court—recounting the history of the at-will
employment concept—has concluded: “By the arrival of the twentieth century, the
at-will doctrine was well-established throughout the United States and served
to reinforce turn-of-the-century ideas concerning laissez-faire economics and
freedom to contract.”  Berube v. Fashion Centre, Ltd., 771 P.2d
1033, 1041 (Utah 1989); see also Bernard v. IMI Sys., Inc., 618 A.2d
338, 343 (N.J. 1993) (noting that, by 1913, most jurisdictions had explicitly
adopted at-will employment rule).


¶ 73.        
In light of the foregoing, it simply strains credibility to maintain
that an employment characterized as “at the will of” the appointing power
lacked the same legal meaning and effect in early-twentieth-century Vermont
that it had throughout the rest of the United States.  We need not,
however, merely surmise how the phrase was understood here from its broad
acceptance elsewhere.  For it was certainly in use in Vermont prior to the
enactment of the town manager statute in 1917, the majority’s claim to the
contrary notwithstanding.  


¶ 74.        
In Rutter v. Burke, 89 Vt. 14, 93 A. 842 (1915), this Court
considered the Burlington city council’s authority to remove certain water
commissioners under a charter provision empowering the council to remove its
appointees “for such causes of incapacity, negligence or bad conduct as to it
shall seem sufficient.”  Id. at 17, 93 A. at 844.  The City
claimed that the charter gave the council unfettered authority to remove
appointees “in its discretion, or at its pleasure.”  Id. at 26, 93
A. at 848.  We rejected the claim, however, relying on the plain language
of the charter, which clearly limited the removal power to the enumerated
causes, as well as the “well established rule that an authority to remove
for cause excludes the power to remove at will.”  Id. (emphasis
added).  Rutter relied, in turn, on a number of out-of-state
decisions in support of this “well established” proposition; all were decided
decades earlier, and all employed the familiar “at will” terminology.  Id.
at 26-27, 93 A. at 848; see Miles v. Stevenson, 30 A. 646, 648 (Md.
1894) (contrasting statute at issue, which expressly required cause for
removal, from others where “there is no limit fixed to the term of the office
and the appointee holds merely at the will of the appointing power”
(emphasis added)); Speed v. Common Council, 57 N.W. 406, 410 (Mich.
1894) (noting that where provision provides that officers may be “removed for
cause” it “excludes the power to remove at will” (emphasis added)); State
ex rel. Gallagher v. Brown, 57 Mo. App. 199, 1894 WL 2191, at *2 (Mo. Ct.
App. 1894) (noting that law generally provides for two ways of removing a
public officer, “for cause” and “without cause, at will” (emphasis
added)).


¶ 75.        
Thus, plaintiff’s argument, and the majority’s conclusion, that “at the
will of” as used in § 1233 did not mean the same thing in Vermont in 1917
as it does today is entirely unpersuasive.  Equally futile is plaintiff’s
broader historical argument that, as part of the general “progressive” reform
movement of the early twentieth century, the town manager form of government was
designed to “insulate[]” the town manager from the shifting “political winds”
that might effect a change in local selectboards.  This goal of
progressive municipal reform, plaintiff argues, lends general support to the
proposition that, in enacting § 1233, the General Assembly intended to
require good cause for removal rather than allow removal at the whim of the
current selectboard.


¶ 76.        
Apart from the absence of any evidence showing that this was, in fact,
the driving ideal behind the statute, however, the argument—taken on its own
terms—is overly simplistic and unreliable.  Historians have long noted the
underlying social, economic, and especially political complexities that
animated “progressivism” as a movement.  See, e.g., D. Rogers, In Search
of Progressivism, 10 Revs. in Am. Hist. 113, 114 (1982) (noting “the
emergence of a pluralistic reading of progressive politics, in which the
fundamental fact of the era is not reform in any traditional sense of the term,
but the explosion of scores of aggressive, politically active pressure groups
into the space left by the recession of traditional political
loyalties”).  Nowhere was this more true than in the area of municipal
reform, where scholars have shown that innovations such as the commission or
town manager form of city government were pushed through by economic and social
elites to wrest power from local ward bosses and centralize control in
professional “experts” and upper-class businessmen.  See, e.g., S. Hays, The
Politics of Reform in Municipal Government in the Progressive Era, 55 Pac.
N.W. Q. 157, 159, 161-62, 167 (1964) (noting that business community was
“overwhelming force behind both commission and city-manager movements,” that
their objection to status quo was not to “corruption per se” but a system that
allowed lower-class and immigrant groups to dominate local politics, and that
they “hoped . . . reform would enable them to increase
their political power” and serve “as vehicles whereby business and professional
leaders moved directly into the inner circles of government”).  Confronted
with growing numbers of enfranchised, lower-class urban immigrants, the goal of
progressive reformers was thus not to remove political influence from municipal
government, but to keep it in the right hands.  See id. at 162
(concluding that municipal reform movements “constituted an attempt by
upper-class, advanced professional and large business groups to take formal
political power from the previously dominant lower- and middle-class elements
so that they might advance their own conceptions of desirable public policy”).


¶ 77.        
It is hardly surprising, therefore, to find statutes authorizing cities
with a town manager form of government to remove the manager at will, or to
find courts upholding such provisions as consistent with that form of
governance.  See, e.g., Curry v. City of Cambridge, 217 N.E.2d 740,
742 (Mass. 1966) (observing that “powers and duties of the city manager are so
closely coordinated with those of the city council in the general management of
the city’s affairs that the Legislature manifestly could not have intended that
its incumbent should be allowed to remain in office even for a very short
period of time against the city council’s wishes”); Note, City Government,
38 B.U. L. Rev. 419, 456, 463-64 (1958)  (reviewing history of “city
manager form of government” in New England, discussing its statutory bases, and
noting that town managers are generally removable at pleasure of city council
under statutory provisions in Massachusetts, New Hampshire, and Connecticut).


¶ 78.        
Thus, there is no historical basis to conclude that the legislative
purpose in enacting § 1233 was to insulate the town manager from local
politics by ensuring that his or her removal was not at the will of the
selectboard but solely for cause. 


¶ 79.        
We are thus squarely confronted with the need to reconcile two seemingly
contradictory concepts—removal “for cause” and “at will”—in one statute. 
We are not, however, entirely without guidance in this regard.  A series
of decisions construing equally venerable Massachusetts laws regulating the
removal of municipal appointees provide a useful starting point.  In O’Dowd
v. City of Boston, 21 N.E. 949 (Mass. 1889), the high court of
Massachusetts was confronted with a statute authorizing a city board to remove
ferry workers “for such cause as they may deem sufficient, and shall assign in
their order for removal.”  Id. at 949 (quotation omitted). 
The plaintiff claimed that the statute required that removal be for cause,
while the City maintained that dismissal was purely at the pleasure of the
board.  


¶ 80.        
The Massachusetts court noted the potential ambiguity in the statute
that appeared to vest broad removal discretion in the board and require removal
for “cause.”  Id. at 950.  It resolved the issue by holding
“[t]he intention of the statute . . . to be to qualify
a removal at pleasure by requiring a record to be made of the
cause.”  Id. (emphasis added).  This construction, the court
observed, ensured both “the vigor and efficiency of [public] administration”
served by the at-will doctrine, while simultaneously discouraging—through the
requirement of public disclosure—removals against public policy, i.e., “for a
cause for which it could not lawfully be made.”  Id.  Armed
with at least a record of the reason for removal, the employee might ultimately
appeal to the “court” of public opinion.  Id.  


¶ 81.        
The Massachusetts court reached the same result in applying a similar
municipal provision in Ray v. Mayor of Everett, 103 N.E.2d 269 (Mass.
1952).  There, a city charter provided that officers appointed by the
mayor “may be removed by the mayor for such cause as he shall deem sufficient
and shall assign in his order of removal.”  Id. at 271.  The
court held that the mayor had complied with the statute by stating the “cause”
for removal in general terms, and was not required to bring specific charges or
afford the employee a hearing, leaving it instead to the “conscience and sound
judgment” of others, rather than the law, as to whether the cause was
sound.  Id. at 272.  


¶ 82.        
In Fabrizio v. City of Quincy, 404 N.E.2d 675 (Mass. App. Ct.
1980), the same issue was revisited in a more modern statute to the same
effect, providing that a mayor may remove a department head “by filing a
written statement with the city clerk setting forth in detail the specific
reasons therefor.”  Id. at 676 (quotation omitted).  The court
held that the mayor had complied with the statute and that, contrary to the
plaintiff’s claim, he was not afforded a “property” interest under the statute
entitling him to a hearing and other due process protections.  Id.
at 677.


¶ 83.        
Although these provisions obviously differ from § 1233, they
nevertheless suggest a useful general approach to reconciling the latter’s
seemingly conflicting terms by qualifying the town manager’s “at-will” tenure
in office with a requirement that the selectboard state the “cause” for
removal.  As suggested in O’Dowd, this approach preserves the
efficiency of the at-will doctrine in municipal employment while also providing
at least a basis for the town manager—and ultimately the public—to judge the
wisdom and merits of the decision.  Thus understood, plaintiff here and
other town managers enjoy no “protectable property interest” in their
employment entitling them to any process other than a clear statement from the
selectboard as to the cause of their removal.  Brennan v. Town of
Colchester, 169 Vt. 175, 179-80, 730 A.2d 601, 605 (1999).


¶ 84.        
Here, the record surrounding the selectboard’s removal decision and its
express statement that plaintiff’s termination was for actions that were
“directly against the will of the board” and further “misrepresented” by
plaintiff to the board, was sufficient to state the “cause” for his removal and
thereby satisfy the statute.  Accordingly, I would affirm the summary
judgment of the trial court in favor of the Town.


¶ 85.        
Although I find the majority’s reasoning to be unpersuasive, this is
clearly a challenging case.  An ambiguous law, nearly a century after its
enactment, presents a unique problem for judicial construction.  Contrary
to the conclusion of the majority, however, the difficulty is not understanding
the statute’s conflicting terms; it is understanding how they relate. 
While we cannot hope to know precisely how the drafters would have answered
this question, we can—and must—at least attempt to harmonize the language they
actually used.  Qualifying the Town’s otherwise absolute removal authority
under the “at will” provision of the statute by requiring that it set forth the
“cause” for  removal offers, in my view, a workable resolution. 
While it may or may not precisely mirror the drafters’ intent, it is at least
more faithful to their language.  Accordingly, I respectfully
dissent.  




 
 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
 Chief Justice

 

 

 



 


















[1] 
Justice Crawford was present for oral argument, but did not participate in this
decision.







[2] 
The Town’s actions with respect to the laptop computer, which was owned by
plaintiff, are the subject of claims in plaintiff’s complaint.  They are
not part of the Town’s motion for partial summary judgment and therefore are
not part of this appeal.







[3] 
The counts dismissed were Counts I-V of plaintiff’s amended complaint. 
Plaintiff had moved to amend the complaint to add the Town of St. Johnsbury and
omit the St. Johnsbury Selectboard, but not the individual selectboard
members.  







[4] 
Early Vermont statutes do address leases at will and estates at will but do not
use the term “at will” in the context of employment.


 







[5] 
See, e.g., Vermont Statutes, Revision of 1947; Public Laws of Vermont, 1933;
General Laws of Vermont, 1917; Public Statutes of Vermont, 1906; Vermont
Statutes, 1894; Revised Laws of Vermont, 1880; General Statutes of the State of
Vermont, 1862; Compiled Statutes of the State of Vermont, 1851; Revised
Statutes of the State of Vermont, 1839; Laws of Vermont of a Public and
Permanent Nature, 1834; Laws of the State of Vermont, 1808.


 


To determine that these terms were absent in early
laws of Vermont, we conducted a keyword search in the HeinOnline Legal Research
Database, http://home.heinonline.org, which contains a searchable database of
Vermont laws and public acts from 1808 through 1947.  Our search returned
no results relating to employment, with the exception of the 1917 town manager
statute.







[6] 
The drafting was actually done by a commission appointed by the Governor and was
not prepared by the Legislature.  See 1917, No. 255.







[7] 
Count I of plaintiff’s complaint alleges that the no-confidence vote did not
terminate his employment and, as a result, he remains the town manager. 
He has not raised that position here, and the trial court did not address
it.  We take it that plaintiff has abandoned the position.







[8] 
The Town argues that the attorney involved was not the Town attorney but only a
Town agent and that plaintiff did not show a material issue of fact with
respect to reliance.  In view of our disposition, we do not consider these
issues.


 







[9] 
Although the trial court defined the elements of promissory estoppel, it
analyzed plaintiff’s claim under the elements of equitable estoppel, a
different doctrine.  Plaintiff’s claim is explicitly one of promissory
estoppel, and we have not analyzed it under equitable estoppel.







[10] 
The complaint is titled as one for “Declaratory Judgment, Injunctive Relief and
Damages.”  The declaratory judgment apparently is that sought in Count I,
which we have observed was essentially abandoned.  See supra,
¶ 7 n.3.  The injunctive relief is for reinstatement.  The
nature of the compensatory damages sought is not specified.


 







[11] 
The motion for summary judgment and supporting memorandum were filed before
plaintiff moved to amend the complaint to join the Town of Saint Johnsbury and
drop the selectboard as a defendant.  The motion addressed the liability
of individual selectboard members.  It never included the Town on this
point.  


 


As required under 24 V.S.A. § 901(a), an action
against an “appointed or elected municipal officer” must be brought instead
against the town.  The Town here never raised this statute, although the
original complaint appeared to have violated it.  We read the statute as
dictating which entity the plaintiff may sue but not restricting the theory of
liability or the defenses available.  Thus, plaintiff can raise against
the Town the same theories of liability he can raise against the selectboard
members, and the Town is entitled to defenses that can be raised by members of
the selectboard, including qualified immunity.  Cf. §§ 901a(b),
(c).  







[12] 
That the at-will employment language and concept have even earlier roots may be
seen in such cases as Avery v. Inhabitants of Tyringham, 3 Mass. 160 (Mass.
1807), where the court held, as to the local minister, that if “his office be at
will” the parish “can remove him at their pleasure” rather than “for good
cause.”  Id. at 178 (emphasis added).